## S99A0253. RODRIGUEZ v. THE STATE.
(518 SE2d 131)

THOMPSON, Justice.

A jury found Emilliano Rodriguez guilty of the malice murder and felony murder of Jorge Paez, and guilty but mentally ill of the

---

malice murder and felony murder of Daysi Posada.[1] His contentions on appeal primarily pertain to his asserted defense of insanity and a claim of ineffective assistance of trial counsel. We affirm.

Five days after Daysi Posada ended an affair with Rodriguez, he drove up to her apartment complex and encountered her and some of her friends in the parking lot. Rodriguez exited his car with a concealed pistol, and approached Posada. When he declared that he wanted to talk to her, and attempted to force her inside his car, he was approached by one of Posada's friends, Jorge Paez, who told him to leave Posada alone. In response, Rodriguez drew his pistol and fatally shot the unarmed Paez. Next he shot Posada in the back as she was attempting to get away. After she collapsed to the ground, Rodriguez fired a second shot into her head, and then fled in his car. These events occurred during daylight hours and were witnessed by several individuals who were familiar with Rodriguez.

Rodriguez was taken into custody shortly thereafter. He waived *Miranda* rights and gave written and taped statements to the police. Initially, he explained to investigating officers that Posada had ended their relationship after telling him that she was just "using" him because she needed money; that she had reported to the police that he had forced his way into her apartment and put a gun to her head; that she was a "bitch"; that he shot Paez because Paez threatened him with a gun; and that he shot Posada to prevent her from notifying the police. In a subsequent taped statement, he related that Posada ended their relationship after Rodriguez's wife found him and Posada together; that he attempted to persuade Posada to change her mind but she reported him to the police and refused to take his phone calls; that he went to her apartment complex on the day in question to attempt to talk to her but Paez inter-

---

[1] The crimes occurred on April 24, 1994. An indictment was returned on June 8, 1994, charging Rodriguez with malice murder (two counts), felony murder with the underlying felony of aggravated assault (two counts), and aggravated assault. Rodriguez entered a special plea of insanity; on September 20, 1995, a jury determined that he was incompetent to stand trial and he was remanded to the custody of the Department of Human Resources for treatment and further evaluation. On October 28, 1996, a second competency trial was held by the court, resulting in a determination that Rodriguez was then competent to stand trial. Rodriguez entered a plea of not guilty by reason of insanity, and trial was held on October 28 and 30, 1996. The jury returned its verdict on October 30, 1996, declaring Rodriguez guilty but mentally ill of malice and felony murder in the killing of Posada; guilty of malice and felony murder in the killing of Paez; and not guilty of aggravated assault. The trial court vacated the felony murder convictions, and Rodriguez was sentenced on November 22, 1996, to two consecutive life sentences. A motion for new trial was filed on December 3, 1996, amended on November 18, 1997, and re-filed by new appellate counsel on March 12, 1998. The motions were denied on April 7, 1998. An order granting a motion for out-of-time appeal was entered on June 17, 1998, and a notice of appeal was filed on June 19, 1998. The case was docketed in this Court on November 9, 1998, and was submitted for decision on briefs on January 4, 1999.

vened and threatened him with a gun; whereupon Rodriguez shot Paez and then shot Posada. It was at that point that Rodriguez explained that a "strong voice" told him to kill Posada, and that he "had to obey that voice."

The State offered the testimony of a clinical psychologist who opined that although Rodriguez knew right from wrong at the time of the shootings, he suffered from a delusional disorder and was operating under a delusion when he shot Posada;[2] but he was not delusional when he shot Paez. Two mental health experts testified for the defense that Rodriguez shot the victims because of a delusional compulsion and did not, at the time, know right from wrong. The jury also heard from lay witnesses who testified that Rodriguez successfully worked as a car salesman during that time frame; that his behavior at all times appeared to be normal; and he had not complained to them of hearing voices.

1. Rodriguez asserts that the evidence demanded a verdict of not guilty by reason of insanity of the murders of Posada and Paez.

> The defendant may be found "not guilty by reason of insanity at the time of the crime" if he meets the criteria of Code Section 16-3-2 [lacked mental capacity to distinguish between right and wrong in relation to the crime] or 16-3-3 [acted because of a delusional compulsion which overmastered defendant's will to resist committing the crime] at the time of the commission of the crime.

OCGA § 17-7-131 (c) (1).

> The appropriate standard of appellate review . . . is whether the evidence, when construed most favorably for the State, would be sufficient to authorize a rational trier of fact to find that appellant failed to prove by a preponderance of the evidence that [he] was insane at the time of the [crimes]. [Cit.]

*Lawrence v. State*, 265 Ga. 310, 311 (1) (454 SE2d 446) (1995).

Rodriguez relies on the cumulative expert testimony to establish that the criteria for an insanity defense under OCGA § 16-3-3 were satisfied. But jurors are not bound by the opinions of expert witnesses regarding a defendant's sanity; instead, they may rely on the presumption of sanity in OCGA § 16-2-3 unless the proof of insanity

---

[2] The expert described this delusion as follows: "[Posada] had to die basically because she had left him," mixed with "his anger at her leaving him."

s *overwhelming. Keener v. State*, 254 Ga. 699, 701 (1) (334 SE2d 175) (1985).

Although there was evidence to support Rodriguez's defense that a delusional compulsion overmastered his will to resist killing Posada, there was also evidence which supported a finding that the shootings were not connected with Rodriguez's delusions. Rodriguez told police that he was angry at Posada because she had thrown him out of their apartment, and he was angry at Paez for attempting to intervene on her behalf. In addition, he admitted to police that he felt guilty about killing Paez, and he stood over Posada's body and apologized for shooting her. There was also compelling lay testimony that Rodriguez functioned in a normal manner during the time frame in question.

Based on the foregoing evidence, this Court finds that a rational trier of fact could have concluded that Rodriguez failed to prove by a preponderance of the evidence that his actions were the result of "a delusional compulsion that overmastered [his] will, were connected with the delusion he was laboring under, and were justified by the delusion." *Lawrence v. State*, supra at 312 (1). See also *Foote v. State*, 265 Ga. 58 (1) (455 SE2d 579) (1995) (testimony from State's expert that defendant knew right from wrong, coupled with arresting officer's observation that defendant appeared to be "rational" was sufficient to allow jury to reject insanity defense); *Caldwell v. State*, 257 Ga. 10 (1) (354 SE2d 124) (1987); *Brown v. State*, 250 Ga. 66 (2) (295 SE2d 727) (1982); *Appling v. State*, 222 Ga. App. 327, 329 (3) (474 SE2d 237) (1996). Compare *Stevens v. State*, 256 Ga. 440 (350 SE2d 21) (1986).

Furthermore, the evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), for the trier of fact to have found Rodriguez guilty beyond a reasonable doubt of malice murder in the death of Paez, and guilty but mentally ill when he killed Posada.

2. It is asserted that the court erred in denying a motion in limine to exclude evidence of a temporary protective order obtained by Posada against Rodriguez five days before the shootings.[3]

At a hearing outside the presence of the jury the court ruled that it would not admit the contents of Posada's sworn petition but would allow into evidence the protective order obtained as a result thereof. Rodriguez objected on grounds that the evidence was both irrelevant and prejudicial. The document was admitted with instructions to the

---

[3] The TPO enjoined Rodriguez from "doing, or attempting to do, or threatening to do, any act of injuring, maltreating, molesting, harassing, harming, or abusing the petitioner in any manner whatsoever . . . and from going to [her] place of employment . . . or [her] residence."

jury that it was obtained as the result of Posada's ex parte appearance before a judge in a separate proceeding.

We agree with the State that the evidence was relevant to prove a material issue in dispute — whether Rodriguez acted under a delusional compulsion and was unable to distinguish between right and wrong when he shot the victims, or whether he deliberately sought out and killed Posada because of prior difficulties between them. "[T]he prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim." *Wall v. State,* 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). As for whether the prejudicial effect of the evidence outweighs its probative value, we note that Rodriguez himself made reference to Posada's complaints to the police in both his written and taped statements to the investigating officers. Thus, we do not find that the document was so inherently prejudicial as to be inadmissible.

3. The court essentially gave pattern jury instructions on the credibility of witnesses and the weight to be accorded the testimony of expert witnesses. Rodriguez asserts that these instructions impermissibly allowed the jury to arbitrarily disregard expert testimony. On the contrary, the jury was correctly charged that while the law permits an expert to testify to opinions derived from knowledge, it is the trier of fact which must determine the weight to be accorded that evidence. See OCGA § 24-9-67. See also *Brown,* supra at (2) (c) (while it is a jury's function to determine the credibility of witnesses and the probative value of testimony, juries must weigh the evidence and may not arbitrarily ignore it).

Nor are the instructions contrary to *Stevens,* supra, where we held that "when the proof of insanity is overwhelming, juries may no longer rely solely on the presumption of sanity." Id. at 442. Evidence of insanity in this case was far from overwhelming. The three expert witnesses disagreed with each other on the proper diagnosis and whether Rodriguez could distinguish right from wrong. The jury merely weighed the evidence in favor of the State.

4. The court did not err in rejecting Rodriguez's request to charge on the law pertaining to delusional compulsion, in favor of the pattern jury instruction. Rodriguez asked the court to omit language from the pattern charge which requires a finding that the delusion concerned a fact, which if true, would justify his acts.

This Court has repeatedly stated that legal justification for an otherwise criminal act is the "essential element" of a defense of delusional insanity. See *Salter v. State,* 257 Ga. 88, 89, n. 2 (356 SE2d 196) (1987), and cases cited therein. Therefore, the court properly instructed that the evidence had to demonstrate that the delusion "was as to a fact which, if true, would have justified the [alleged] act

[by the accused]." Id.; *Lawrence*, supra.

5. It is asserted that Rodriguez was denied effective assistance of trial counsel. To prevail on this claim, Rodriguez must show that counsel's performance was deficient and that, but for the deficient performance, there is a reasonable likelihood that the jury would have returned a different verdict. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Two highly experienced attorneys were appointed to represent Rodriguez. Both testified at the hearing on the motion for new trial that they exhaustively investigated the case, delved in Rodriguez's background (traveling to Cuba to interview witnesses), and vigorously pursued an insanity defense. Rodriguez claims counsel were ineffective in several respects.

(a) Since we have determined that the jury was properly instructed on the law of insanity, counsel cannot be deemed ineffective for failing to seek alternative instructions. See generally *Cammon v. State*, 269 Ga. 470 (4) (a) (500 SE2d 329) (1998).

(b) Rodriguez submits that trial counsel was ineffective in failing to call certain lay witnesses who could allegedly testify to his mental deterioration in the months leading up to the shootings. Trial counsel testified at the hearing on the motion for new trial that these witnesses were interviewed at length and each stated that Rodriguez was a responsible, hard-working man who lived a normal life. Counsel elected not to call these witnesses because their testimony would have undermined an insanity defense.

"Decisions regarding which witnesses to present are matters of trial strategy. When founded on legitimate evidentiary concerns, such decisions do not constitute ineffective assistance of counsel." *DeYoung v. State*, 268 Ga. 780, 786 (5) (493 SE2d 157) (1997). See also *Slade v. State*, 270 Ga. 305 (2) (509 SE2d 618) (1998) (matters of trial strategy and tactic should not be judged in hindsight).

(c) When Rodriguez stated his intent to call witnesses to testify to his mental condition at the time of trial, the court allowed the State's psychologist to testify to factors which may have heightened his anxiety levels, and among those stress factors, was the State's initial decision to seek the death penalty in this case. Since the State was entitled to establish the basis for Rodriguez's current condition, an objection to testimony of the State's initial decision to seek the death penalty would have proven futile. See *Sprouse v. State*, 242 Ga. 831, 833 (3) (252 SE2d 173) (1979) (" 'Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value.' [Cits.]").

(d) The wife of victim Jorge Paez gave testimony through an interpreter selected by the prosecution. When it became apparent that the translator was interpreting the testimony inaccurately, the

court so instructed the jury. A second translator was brought in, and the questioning began anew. It is asserted that counsel was ineffective in failing to object to the interpretation and to insist upon a court certified interpreter.

First, Rodriguez fails to show in which respects the faulty translation was harmful. Moreover, our review of the record shows that Ms. Paez's testimony was cumulative of the testimony of other witnesses.[4] Thus, any inaccuracies in the translation were harmless and did not change the result of the case. *Strickland*, supra. See also *Choi v. State*, 269 Ga. 376 (3) (497 SE2d 563) (1998) (trial court did not err in finding that an interpreter was qualified where defendant failed to point to specific harmful errors made in the interpretation).

(e) During closing arguments, the State referred to Rodriguez as a car salesman who was "going to soak every red cent out of [his customers]. . . . That is how Emilliano Rodriguez made a living. This is a guy that is capable of manipulating people."

"[T]he permissible range of argument during final summation is 'very wide.' [Cits.] Each party has the right to argue all reasonable inferences drawn from the evidence presented at trial." *Simmons v. State*, 266 Ga. 223, 228 (6) (b) (466 SE2d 205) (1996). See also OCGA § 17-8-75. The evidence showed that Rodriguez was a used car salesman and one of his expert witnesses testified that Rodriguez varied his story to please different doctors. Even if the remark that Rodriguez was "going to soak every red cent out of [his customers]" was found to be objectionable, there is no reasonable probability that the comment altered the outcome of the trial.

(f) Finally, Rodriguez contends that trial counsel was ineffective in failing to object to testimony from the State's psychologist elicited on redirect, concerning the future threat Rodriguez posed toward others, and in failing to object to similar argument during summation. As part of its trial strategy, trial counsel introduced this issue on cross-examination to bolster its defense of insanity by demonstrating that Rodriguez would be institutionalized rather than simply released. Since counsel made the strategic decision to bring these issues to light, they will not be deemed ineffective for failing to object. *DeYoung*, supra; *Slade*, supra. And because these matters were properly in evidence, an objection during summation would have been inappropriate. OCGA § 17-8-75.

*Judgment affirmed. All the Justices concur.*

---

[4] Ms. Paez observed Rodriguez shoot the victims. In essence, she testified to his behavior and demeanor in the parking lot at the time the crimes were committed.

DECIDED MAY 3, 1999.

*Melissa M. Nelson,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Robert M. Coker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Frank A. Ilardi, Assistant Attorney General,* for appellee.