## A00A0528. VANDERPOOL v. THE STATE.
### (536 SE2d 821)

BLACKBURN, Presiding Judge.

Samuel Vanderpool appeals his convictions for aggravated assault on a police officer, hijacking a motor vehicle, kidnapping with bodily injury, armed robbery, and felony obstruction of an officer, contending that he was insane at the time these crimes occurred. For the reasons set forth below, we affirm.

After committing the criminal acts listed above in a crime spree across Banks County and into Gwinnett County during a time span of approximately one hour, Vanderpool claimed that he was not guilty for his actions by reason of insanity. Vanderpool was first tried, without a jury, in Gwinnett County for the crimes committed there, and the trial court found him to be not guilty by reason of insanity. Subsequently, Vanderpool received a jury trial for the earlier crimes committed in Banks County, and he was convicted of aggravated assault on a police officer,[1] hijacking a motor vehicle, kidnapping with bodily injury, armed robbery, and felony obstruction of an officer.

In the Banks County trial, which is the subject of the present appeal, Vanderpool contends that the trial court erred by: (1) denying his motion for a directed verdict of not guilty by reason of insanity;

---

[1] Vanderpool was found guilty but mentally ill for one count of aggravated assault on a police officer and guilty for a second count.

(2) denying his written request to charge the jury that he was entitled to a presumption of insanity based on the earlier adjudication by the Gwinnett County court; and (3) by denying his plea in bar to find him not guilty by reason of insanity based on the principle of collateral estoppel. For the reasons set forth below, we affirm.

1. Vanderpool contends that the trial court erred by denying his motion for a directed verdict of not guilty by reason of insanity. We disagree.

> [Vanderpool] may be found "not guilty by reason of insanity at the time of the crime" if he meets the criteria of Code Section 16-3-2 (lacked mental capacity to distinguish between right and wrong in relation to the crime) or 16-3-3 (acted because of a delusional compulsion which overmastered defendant's will to resist committing the crime) at the time of the commission of the crime. OCGA § 17-7-131 (c) (1).

*Rodriguez v. State*, 271 Ga. 40, 42 (1) (518 SE2d 131) (1999).

> The appropriate standard of appellate review . . . is whether the evidence, when construed most favorably for the State, would be sufficient to authorize a rational trier of fact to find that [Vanderpool] failed to prove by a preponderance of the evidence that (he) was insane at the time of the (crimes). (Cit.)

*Lawrence v. State*, 265 Ga. 310, 311 (1) (454 SE2d 446) (1995).

Construed in this light, the record shows that, on February 17, 1995, Officer Pat Patterson found Vanderpool stranded on the side of the highway after one of his tires had blown out. Patterson instructed Vanderpool that his car, which was blocking the road, would have to be towed. Vanderpool agreed, removed the tag from his vehicle, and then waited with Patterson in his patrol car. When the tow truck arrived, Patterson inspected Vanderpool's blown tire, and, while Patterson was doing so, Vanderpool snuck behind him and stole his gun. Vanderpool then disabled Patterson's radio, forced Patterson to sit in the passenger's side of the patrol car, and drove away, firing a warning shot at the tow truck driver.

As he was speeding down the highway, Vanderpool abruptly hit the brakes, causing the vehicle to slide into a ravine on the side of the road. While they were stopped, Vanderpool began to pull a ski mask over his face. At that point, Patterson removed a small pistol hidden in his pocket, and he shot Vanderpool several times. Vanderpool, however, was not subdued, and he attempted to fire back at Patterson. When the gun malfunctioned, Vanderpool began hitting Patter-

son in the head with it, causing both men to fall out of the car. Vanderpool then got to his feet, entered the patrol car, and sped away.

With the help of a passing motorist, Patterson reported Vanderpool's actions to the Banks County Sheriff's Department. Meanwhile, Vanderpool drove the stolen police car through Banks County and into Gwinnett County, where it broke down. Afterward, Vanderpool hijacked a blue minivan at gunpoint and drove it until it broke down as well. Vanderpool was then taken into custody, and he subsequently claimed that his actions were the product of paranoid delusions of persecution.

During trial, Patterson testified that Vanderpool appeared to be lucid, coherent, and perfectly normal at the time he kidnapped him and absconded with his patrol car. Patterson explained that, when he initially approached Vanderpool's car, Vanderpool was able to clearly and succinctly communicate with him. During the approximately twenty minutes Patterson and Vanderpool waited for the tow truck to arrive, the two men carried on a normal conversation which included nothing out of the ordinary.

Based on this evidence, the jury had some basis on which to conclude that Vanderpool failed to prove by a preponderance of the evidence that his actions were the result of delusions of persecution and that the evidence was sufficient to support his convictions under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Rodriguez*, supra at 43 (1).

Contrary to Vanderpool's arguments, the fact that two specialists opined that Vanderpool was under delusional impulses at the time of the crimes does not change this result.

> [J]urors are not bound by the opinions of expert witnesses regarding a defendant's sanity; instead, they may rely on the presumption of sanity in OCGA § 16-2-3 unless the proof of insanity is *overwhelming*. *Keener v. State*, 254 Ga. 699, 701 (1) (334 SE2d 175) (1985).

(Emphasis in original.) *Rodriguez*, supra at 42-43. Although there was evidence supporting Vanderpool's claim that he was insane, there was also direct testimony from Patterson that Vanderpool acted normally at the time that Patterson was kidnapped. Moreover, the experts in this case indicated that it was possible for Vanderpool to phase in and out of delusional episodes. The trial court appropriately denied Vanderpool's motion for a directed verdict of not guilty by reason of insanity.

2. Vanderpool argues that the trial court erred by denying his written request to charge the jury that he was entitled to a presumption of insanity based on the earlier adjudication by the Gwinnett

County court. This argument is misplaced.

As a general rule, "[e]very person is presumed to be of sound mind and discretion but the presumption may be rebutted." OCGA § 16-2-3. Furthermore, a mental condition, once proved to exist, is presumed to continue. OCGA § 24-4-21. See also *Nagel v. State*, 262 Ga. 888, 889 (1) (427 SE2d 490) (1993). For example, an individual who has been proven to be insane is presumed to remain so in the future.

Here, Vanderpool contends that the Gwinnett trial court's determination that he was insane at the time he committed the latter crimes in Gwinnett County raises a presumption that he was also insane when he committed the earlier crimes in Banks County. He argues that the presumption of insanity should apply retroactively. This argument, however, directly contradicts OCGA § 24-4-21 which indicates that the mental state of insanity, once proven, continues to cover actions of the defendant occurring after the behavior which resulted in a finding of insanity. A presumption of continuing insanity applies prospectively to future acts of the defendant, not retroactively to past behavior.

The adjudication of insanity in Gwinnett County would raise a presumption that crimes committed by Vanderpool *subsequent* to those occurring in Gwinnett County were the result of his insanity. It would not, however, raise such a presumption regarding crimes committed *prior* to those committed in Gwinnett County. Therefore, Vanderpool was not entitled to a presumption of insanity in Banks County.

Contrary to Vanderpool's argument, *Butler v. State*, 252 Ga. 135 (311 SE2d 473) (1984) does not change this result. In *Butler*, a probate court, which was familiar with the defendant's long history of mental illness, found the defendant to be in need of immediate psychiatric treatment and granted a motion for an involuntary commitment. Later that day, the defendant stabbed an officer to death as he tried to take her to a mental institution. Based on these facts, our Supreme Court held that the defendant was entitled to a presumption of insanity at her murder trial based on the probate court's finding of insanity. Thus, the presumption of insanity applied to the defendant's criminal act which occurred after the point at which her mental state of insanity had been proven. *Butler*, therefore, has no application to the case at hand because the acts for which Vanderpool was tried occurred prior to the point in time at which he was proven to be insane.

3. Finally, Vanderpool contends that, based on the doctrine of collateral estoppel, the State should have been prevented from relitigating the question of his insanity in Banks County because that issue had already been determined in Gwinnett County. Again, this

enumeration lacks merit.

Pursuant to the doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Punctuation omitted.) *Hunter v. State*, 191 Ga. App. 769, 771 (382 SE2d 679) (1989). "[T]he application of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial." (Punctuation omitted.) *Mims v. State*, 191 Ga. App. 628, 631 (3) (382 SE2d 414) (1989). Furthermore, collateral estoppel proscribes relitigation of only those issues that were "necessarily resolved in the defendant's favor at the first trial." (Punctuation omitted.) Id.

At the outset, it must be noted that sanity may ebb and wane like a mental tide. A defendant who is perfectly lucid at one moment may be maniacal at the next. This fact is borne out by the Banks County jury's verdict in this case in which it was found that Vanderpool was guilty but mentally ill as to one count and guilty as to the others. Accordingly, we cannot say that the trial court in Gwinnett County necessarily considered Vanderpool's mental state at the time he initiated the kidnapping of Patterson in Banks County in reaching his decision. Moreover, the crimes committed in Gwinnett County were against different victims from those crimes committed in Banks County. Therefore, to determine that Vanderpool was insane while he was in Gwinnett County was not necessary to a finding that he was insane in Banks County, and collateral estoppel does not apply.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JULY 6, 2000

*Kathleen J. Anderson*, for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.