## S02A0796. BOSWELL v. THE STATE.
(572 SE2d 565)

FLETCHER, Chief Justice.

A jury found Cynthia Boswell guilty but mentally ill for the shooting deaths of her mother, Mary Cheek, and son, Christopher Boswell. The sole issue on appeal is whether the evidence of Boswell's mental state demanded a verdict of not guilty by reason of insanity, instead of the guilty but mentally ill verdict that the jury rendered. Because the evidence was constitutionally sufficient to support the jury's verdict, we affirm.[1]

On November 23, 1998, Boswell shot and killed her mother and son while they lay in their beds in DeKalb County. Shortly thereafter, she traveled to her father's home in Cobb County, lured him into the basement, and shot him in the back. Although wounded, Boswell's father was able to wrestle the gun away from her before she fled. He subsequently died from the gunshot wound.

Boswell killed her family because she suffered from an ongoing delusion that her ex-husband and William Lanham, a man that she met during her stay at a mental health hospital, belonged to the Mafia, or some similar secret criminal organization, that planned to burn her and her family to death. To save her family from burning, she shot them.

Following the shootings, Boswell called 911 and told the operator that she had killed her mother and son. She also called Lanham to see whether he wanted to go to dinner with her, but did not mention that she had just shot her son and parents. She subsequently drove south toward Florida. Along the way, she picked up a hitchhiker, told him that she was going to the beach to take a permanent swim

---

[1] The crimes occurred on November 23, 1998. On February 8, 1999, a grand jury indicted Boswell for two counts of malice murder and two counts of felony murder, and a jury found her guilty but mentally ill on all counts on May 19, 2000. The trial court sentenced her to two concurrent terms of life imprisonment. Boswell moved for a new trial on June 5, 2000, and the trial court denied that motion on December 18, 2001. Boswell filed her notice of appeal on January 11, 2002, and the case was docketed in this Court on February 8, 2002. The case was submitted for decision on April 1, 2002.

because a big organization was after her, and passed him a note asking him to kill her. After the police stopped and arrested Boswell in south Georgia, she stated that she had shot her family because the Mafia was going to burn them.

The police found four notes written by Boswell, two in her purse and two on her kitchen counter. The substance of the first note in her purse read:

> I have killed my mother, son and father because William Lantham [sic] was going to burn them because I turned him into the authorities. May God forgive me.

The second note in her purse read:

> Now, the devil is playing games with me and would not kill me so I am going to do it myself. He is directly responsible for everything. I tried to go swimming in [L]ake [L]anier to do it, but I couldn't do it there.

One of the notes on the kitchen counter read:

> William Lanham was going to burn all of us to death. God forgive me I could not let him do it. He said he was going to burn Christopher, my mother, my father, and myself. I think he is also going to burn my ex-husband David Boswell [telephone number]. P.S. Wanda leave this alone!

The other note on the kitchen counter stated Boswell's desire to have her possessions donated to a particular church.

1. In Georgia, a person is not legally insane simply because she suffers from schizophrenia or a psychosis.[2] Rather, a defendant is not guilty by reason of insanity if, at the time of the criminal act, the defendant did not "have [the] mental capacity to distinguish between right and wrong in relation to such act" or a mental disease caused "a delusional compulsion [that] overmastered h[er] will to resist committing the crime."[3] A defendant who is not insane may nonetheless be found guilty but mentally ill if, at the time of the crime, the jury finds beyond a reasonable doubt that she committed the crime and had "a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."[4]

When a delusional compulsion is the basis of an insanity

---

[2] *Fuss v. State*, 271 Ga. 319, 320 (519 SE2d 446) (1999).

[3] OCGA §§ 16-3-2; 16-3-3.

[4] OCGA § 17-7-131 (a) (2), (c) (2); *Foote v. State*, 265 Ga. 58, 59 (455 SE2d 579) (1995).

defense, the delusion must be one that, if it had been true, would have justified the defendant's actions.[5] As both parties agree, Boswell cannot have a viable delusional compulsion defense because a person is not justified in killing someone to save that person from burning by the Mafia. Instead, Boswell contends that her delusions rendered her incapable of distinguishing right from wrong.

2. Defendants are presumed sane,[6] and a defendant claiming insanity bears the burden to prove her insanity by a preponderance of the evidence.[7] Because the jury rejected Boswell's insanity defense at trial, we must determine on appeal "whether, after reviewing the evidence in the light most favorable to the [S]tate, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that [s]he was insane at the time of the crime."[8] Unless the evidence of insanity is overwhelming, the jury's determination that the defendant was sane should be upheld.[9]

Boswell presented the only expert testimony, and both experts testified that Boswell did not know right from wrong. The jury, however, is not bound by the opinions of expert witnesses.[10] It may look to, among other things, the words, conduct, demeanor, motive, and other circumstances connected with Boswell's acts in determining her sanity.[11] The jury also may decide what credibility and weight to give the experts' opinions, considering such things as one expert's failure to ask Boswell for her definitions of right and wrong or his solicitation of business from the public defender's office without extending a similar interest for employment with the prosecutor's office.[12]

Here, the evidence showed that Boswell asked God for forgiveness after the killings, which one expert testified meant asking pardon for one's sins. Another of Boswell's expert witnesses testified that Boswell generally understood right from wrong, but that, as between killing her family or allowing the Mafia to kill them, killing them herself was morally justified. Yet, as the State argued to the jury, Boswell's desire to "save" her family was not so overwhelming as to cause her to continue to try to kill her father after he had wrestled the gun from her hands. Instead, she fled her father's house and later

---

[5] *Stevens v. State*, 256 Ga. 440, 442 (350 SE2d 21) (1986).

[6] OCGA § 16-2-3.

[7] *Lawrence v. State*, 265 Ga. 310, 312-313 (454 SE2d 446) (1995); *Brown v. State*, 250 Ga. 66, 70 (295 SE2d 727) (1982).

[8] *Keener v. State*, 254 Ga. 699, 701 (334 SE2d 175) (1985) (punctuation omitted). See also *Rodriquez v. State*, 271 Ga. 40, 42 (518 SE2d 131) (1999).

[9] See *Rodriguez*, 271 Ga. at 42-43.

[10] *Fuss*, 271 Ga. at 320; *Rodriguez*, 271 Ga. at 42.

[11] Id.

[12] *Rodriguez*, 271 Ga. at 44; *Brown*, 250 Ga. at 71.

was apprehended in south Georgia, miles from her home in the Atlanta area. As one expert agreed, Boswell chose the lesser of two evils, which as the State argued to the jury still meant that Boswell chose an "evil."

Boswell's expert testimony also showed that Boswell planned the killings, intended for her victims to die, knew that she was ending their lives, appreciated the finality of her actions, knew she had done a "terrible" thing, was remorseful, and knew some people would view her actions as illegal. Also, she understood the concept of guilt and the significance of pleading guilty but mentally ill versus not guilty by reason of insanity. Both of Boswell's experts agreed that Boswell did not suffer from command hallucinations that told her what to do. One of Boswell's experts, who also was a lawyer and member of the Georgia Bar, testified that Boswell met the definition for mentally ill, which he acknowledged is incorporated in Georgia's definition of guilty but mentally ill.[13]

The evidence further showed that, rather than fearing Lanham, Boswell was obsessed with him and thought of him as her guardian. She invited him to go to Mexico with her and her son for a vacation and subsequently called Lanham from Mexico after he had declined to go on the trip. On the same day Boswell killed her family, she called Lanham to invite him to dinner and responded "no" when Lanham asked whether her son was coming too, never mentioning that she had killed her family earlier in the day. Lanham testified that he had been around Boswell when she acted normal and when she did not, and Boswell sounded "normal" during this telephone conversation.

The evidence showed that Boswell was mentally ill, but the jury also heard sufficient evidence to support its decision that Boswell knew right from wrong at the time she killed her mother and son. Because the evidence also showed that Boswell shot her mother and son with the intention of killing them, we conclude that the evidence presented at trial was sufficient to enable a rational trier of act to find Boswell guilty but mentally ill for the crimes for which she was convicted,[14] and the trial court therefore correctly denied Boswell's motion for directed verdict.[15]

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 12, 2002.

*Claudia S. Saari*, for appellant.

---

[13] See OCGA § 17-7-131 (c) (2).
[14] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[15] See *Jordan v. State*, 272 Ga. 395, 395 (530 SE2d 192) (2000).

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.