**SECOND DIVISION
BARNES, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A2041. SIMON v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Christopher Simon was found guilty but mentally ill of two counts of aggravated assault, two counts of aggravated battery, three counts of obstruction of an officer, and two counts of theft by shoplifting. Following the denial of his motion for new trial, he appeals, contending that the trial court erred in failing to direct a verdict of not guilty by reason of insanity pursuant to OCGA § 16-3-3 (delusional compulsion)[1] and in failing to accurately respond to a jury note about his

---

[1] Pursuant to OCGA § 16-3-3, "A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime."

level of burden to establish insanity. He further contends that his trial counsel was ineffective. For the reasons presented below, we affirm.

> [Simon] "may be found 'not guilty by reason of insanity at the time of the crime' if he meets the criteria of . . . [OCGA § ]16-3-3 [,] (acted because of a delusional compulsion which overmastered [Simon's] will to resist committing the crime) at the time of the commission of the crime." OCGA § 17-7-131 (c) (1). The appropriate standard of appellate review is whether the evidence, when construed most favorably for the State, would be sufficient to authorize a rational trier of fact to find that [Simon] failed to prove by a preponderance of the evidence that he was insane at the time of the crimes.

(Citations and punctuation omitted.) *Rodriguez v. State*, 271 Ga. 40, 42 (1) (518 SE2d 131) (1999).

So viewed, the evidence shows that on September 14, 2008, a clerk at a Quick Thrift convenience store observed Simon enter the store, take two packages of gum from the candy aisle, put them in his pocket, and walk out. Simon didn't respond when the clerk asked if he was going to pay; instead, he continued walking out of the store. The clerk followed Simon outside and was able to get his tag number. As she walked back into the store, Simon suddenly drove forward and struck the clerk with

2

the front of his car, then "put the car in reverse and backed out [of the parking lot.]" The clerk's back was injured.

A short time later, Simon entered a BP gas station, took a package of cigars from the counter and walked toward the door. When the store owner told him to pay for the cigars, Simon cursed him, told him that he did not have to pay, and walked out of the store. The owner followed Simon out of the store with pen and paper to write down his tag number. As the owner stood near the front of the store, Simon drove his car toward the owner, struck him with the car, and drove away. The owner suffered multiple fractures in both legs.

Police responded to the incidents, and a vehicle pursuit involving Simon and the police ensued through Cobb County, which was finally resolved when Simon's car was disabled by a police "ramming" maneuver. After his car was disabled, Simon got out of his car, approached the nearest police vehicle, and started punching the officer through the open car window. The officer suffered a fractured facial bone and cracked orbital socket. Simon struggled with several officers until he was finally subdued by pepper spray. While in custody, Simon apologized and told the police that a friend gave him "laced" marijuana.[2]

---

[2] Marijuana was found in Simon's blood samples, but no other drugs.

1. Simon contends that the evidence was overwhelming that he was insane pursuant to OCGA § 16-3-3, acting under a delusional compulsion, and therefore the trial court erred in not directing a verdict of not guilty by reason of insanity. Simon's defense at trial was that he was insane and not responsible for his actions because he was acting upon a delusional compulsion.

> In Georgia, a person is not legally insane simply because he suffers from schizophrenia or a psychosis. Rather, a defendant is not guilty by reason of insanity if, at the time of the criminal act, the defendant did not have the mental capacity to distinguish between right and wrong in relation to such act or a mental disease caused a delusional compulsion that overmastered his will to resist committing the crime. OCGA §§ 16-3-2, 16-3-3.

(Citations and punctuation omitted.) *Alvelo v. State*, 290 Ga. 609, 612 (3) (724 SE2d 377) (2012). Furthermore, "[a] finding of insanity based upon OCGA § 16-3-3 requires proof that (1) the accused acted under a delusional compulsion; (2) the criminal act was connected with the delusion; and (3) the delusion related to a fact which, if true, would have justified the act." *Appling v. State*, 222 Ga. App. 327, 329 (3) (474 SE2d 237) (1996).

> When a delusional compulsion is the basis of an insanity defense, the delusion must be one that, if it had been true, would have justified the

4

defendant's actions. Defendants are presumed sane, and a defendant claiming insanity bears the burden to prove his insanity by a preponderance of the evidence.

(Citation and punctuation omitted.) *Alvelo*, 290 Ga. at 612 (3).

At the trial, Simon's mother testified that Simon was 20 years old, lived at home, and had started exhibiting disturbing behavior a couple of weeks before the incident. Simon had not had any treatments for mental health issues before 2008, but, according to the mother's testimony, in high school he was an introvert, never went to school activities, did not have a girlfriend, and "stayed at home . . . always on the computer." The mother testified that Simon's behavior changed dramatically in September 2008, including excessive spending sprees, not sleeping or eating, referring to his mother as the devil, and feeling that people were after him. She further testified that as his bizarre behavior increased, she became increasingly afraid of Simon, and believed that he might be "possessed" or that he was under "spiritual attack."

The mother testified that on September 12, 2008, two days before Simon's arrest, he banged on his parents' bedroom door, proclaiming that "he was Jesus, that he had been hiding inside [Simon's] body until now." The police were called, and

Simon was later transported by ambulance to the hospital for observation. The mother further testified that, although she believed that Simon would be admitted, later that evening she found him in the hospital parking lot and he told her that he had been released, so she took him home. She recalled that her husband was fearful for her because Simon continued to refer to her as Lucifer, and that she spent the night before the incident away from home. When she talked to Simon the morning of the incident, he told her he was at a friend's house, that he had a very bad headache, and that he wanted to be baptized and "saved." She did not hear from Simon again until police called her after his arrest.

Simon's expert forensic psychologist diagnosed him with schizophrenia, schizoaffective disorder – a disorder that manifests symptoms of both bipolar disorder and schizophrenia – and cannabis dependency. He testified that he believed Simon

> did suffer from a delusional compulsion. I believe that he – his delusional belief was so strong that it over[-]mastered his will to resist . . . doing the things that he did because the delusions so impacted on his ability to see things accurately, so impacted on his reality that he was behaving as though all the things he believed were real.

He further testified that although Simon told him that he had smoked marijuana heavily since he was 17 years old, the marijuana use was incidental to the

6

schizophrenia diagnosis, "[s]o if a person has schizophrenia and then smokes marijuana, they don't have cannabis-induced psychotic disorder. They have schizophrenia smoking marijuana." He opined that Simon's delusional compulsions were evident in his crimes in that he attacked the police rather than attempting to evade arrest because "[h]is goal was to get to a church to thwart these evil demons."

The State's expert testified that he was unable to conclude that Simon was insane because Simon confessed that he had smoked marijuana and "even if there was a psychotic feature, it's masked by the fact that he voluntarily altered his state of mind." He further testified that

> if there was a delusional compulsion that overmasters his will to resist committing any offense, then I am able to render an opinion and advise the court that, from a psychological standpoint he was insane at the time of the act or he was not mentally competent at the time of the crime for which he's charged. But in view of the fact that he had voluntarily ingested a mind-altering substance, I'm precluded from saying that.

Although the evidence shows Simon suffered from a mental illness, this is insufficient to establish legal insanity under Georgia law. *Rogers v. State*, 195 Ga. App. 446, 447-448 (2) (394 SE2d 116) (1990). In this case, there were circumstances which would have authorized a rational trier of fact to reject the testimony of Simon's

7

expert to the effect that Simon was acting under the influences of a delusional compulsion that if true would have justified his actions.

Jurors are not bound by the opinions of expert witnesses regarding a defendant's sanity; instead, they may rely on the rebuttable presumption of sanity, unless the proof of insanity is overwhelming. *Keener v. State*, 254 Ga. 699, 701 (1) (334 SE2d 175) (1985). The evidence did not clearly establish a delusion "as to a fact which, if true, would justify the act." *Brown v. State*, 228 Ga. 215, 217-218 (2) (184 SE2d 655) (1971); see *Rodriguez v. State*, 271 Ga. 40, 43 (1) (518 SE2d 131) (1999) (evidence supported finding that shooting was not connected to the defendant's delusions.) Moreover, that Simon apologized to police when he was in custody and said that he was acting under the effects of "laced" marijuana suggested a guilty conscience and a rational awareness of actions rather than actions driven by a delusional compulsion. See, e.g., *Collins v. State*, 283 Ga. App. 188, 191 (1) (a) (641 SE2d 208) (2007) (flight "can serve as circumstantial evidence of guilt"); *Johnson v. State*, 255 Ga. App. 721, 722 (2) (566 SE2d 440) (2002) ("a defendant's attempt to influence a witness … is evidence of consciousness of guilt").

Considering the evidence in the light most favorable to the verdict, we are constrained to hold that the Simon was not entitled to a directed verdict of acquittal on the basis of his insanity defense.

2. Simon next contends that the trial court deprived him of due process of law in that it failed to accurately respond to a note from the jury during its deliberation that demonstrated that the jury misunderstood Simon's burden of proof to establish insanity by delusional compulsion. We do not agree.

During the second day of deliberations, the jury sent the following note to the trial court:

> We are all mostly of an accord, but 2 people are seeing things differently. I am thinking that if you could instruct us on the legal definition of insanity and reiterate that everyone is presumed sane, this would help us to focus on this key issue. The defense has the burden of proving beyond a reasonable doubt that the defendant was (legally) insane at the time the events happened – this burden should revolve around presenting *evidence* not just theorizing. (Correct?) I am very concerned that most of us are of the same mind, but several are not. I intend to take the various precise aspects of insanity and go through those – I want us to come to a unified, clear decision.

The trial refused to verbally recharge the jury on the insanity defense as requested by Simon. Instead it advised the parties that:

9

what I'm going to essentially say is, all I can do is reread the charge, and you have it, but the charge sets out the procedure where you start, what the defendant's burden is if he raises a certain issue and what his level he has [sic] to raise it, preponderance, and then what the State's burden is to either overcome that, to prove it or disprove it.

After instructing the jury that it would not "reread [the jury] because it's there," and that it could not emphasize one part of the charge as opposed to another part; the trial court then referred the jury to the written charge and instructed the jury that

the charge itself lays out where you start and what the burdens are on each party, if there are any burdens. And you need to just chart it out like a flow chart, where do you start, what's the State's burden. If the defense raises an issue, what is its burden, and then what's the State's burden to overcome it.

Although Simon contends on appeal that the trial court should have reread the charge to correct the jury's statement about his burden of proof, we find no error with the trial court's action in instructing the jury as it did. The trial court instructed the jury to reference and apply the burden as outlined in the charge. It also advised that a flow chart outlining the various burdens might prove helpful. The written charge provided to the jury clearly indicated that Simon's burden of proof required to establish his defense of insanity was a preponderance of the evidence. Accordingly,

10

we discern no error by the trial court. Accord *Cotton v. State*, 279 Ga. 358, 359 (3) (613 SE2d 628) (2005) ("because of the jurors' difficulty in distinguishing between felony murder and voluntary manslaughter, providing them with written instructions was particularly appropriate.")

3. In two enumerations of error, Simon contends that his trial counsel was ineffective. He argues that trial counsel was ineffective for requesting only the general pattern instructions on insanity, which included both forms of insanity – mental incapacity to distinguish between right and wrong and delusional compulsion. And, in a related enumeration, he contends that his trial counsel was ineffective for failing to request a jury charge specifically addressing the burden of proof required to establish his defense of insanity by delusional compulsion.

> [I]n order to prevail on a claim of ineffective assistance of counsel, [Simon] must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. To meet the first prong of that test, he must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong of the test, he must show that there

11

is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of the proceeding would have been different. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Woods v. State*, 291 Ga. 804, 805-806 (2) (733 SE2d 730) (2012).

We discern no error. Contrary to Simon's assertions, the trial court's charge specifically explained that "the defendant has the burden of proving insanity by a preponderance of the evidence," and defined preponderance of the evidence as "evidence on the issues involved that, while not enough to free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." Where, as here, "the jury was properly instructed on the law of insanity, counsel cannot be deemed ineffective for failing to seek alternative instructions." *Rodriguez,* 271 Ga. at 45, (5) (a).

*Judgment affirmed. McFadden and McMillian, JJ., concur.*