**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 8, 2019**

# In the Court of Appeals of Georgia

A18A2016. JOHNSON v. THE STATE.

RICKMAN, Judge.

Quentin Johnson was tried and convicted in DeKalb County on one count each of armed robbery, aggravated assault, and possession of a weapon during the commission of a felony, all crimes that occurred in that county. He was sentenced to life in prison. At trial, the State presented evidence that Johnson was involved in a five-day crime spree that covered three other counties, with incidents in Cobb County and Fulton County preceding the DeKalb County incident, and additional crimes in Gwinnett County following the DeKalb County incident. Following the denial of his amended motion for new trial, Johnson appeals, raising three enumerations of error, including that the DeKalb County trial court erred by allowing evidence of the crimes in Cobb County and Fulton County. Finding no error, we affirm.

Construed in favor of the verdict, the evidence presented at trial shows that at about 5:30 p.m. on November 1, 2011, a female victim and her granddaughter were assaulted at a service station in Cobb County. A black man wearing a black-hooded jacket, with the hood pulled down over his forehead, approached the victim from behind as she was getting out of her car and said to "give it up." The two argued and started scuffling as the man tried to take the victim's keys. Eventually, the man put a gun to the victim's forehead, snatched her keys, and pushed her to the ground, breaking the victim's arm and shoulder. The man also pointed the gun at the victim's granddaughter to force her out of the car. The man then drove off in the victim's black Chevrolet Cobalt. The victim's billfold, including identification cards, credit cards, and cash, was in the vehicle when the man left. A red truck appeared to leave in coordination with the perpetrator. At the DeKalb trial, the Cobb victim identified Johnson as the man who assaulted her in Cobb County.

Three days later, at approximately 12:30 a.m. on November 4, a woman driving a blue 2007 Honda Civic was assaulted at a gas station in Fulton County. As she was pumping gas, a man with a gun approached from the front as a second man approached from behind. The gunman pointed the weapon at her head and told her to "drop the m-fing pump and give up the keys." She complied. The two men got into

2

her car and left. The victim described the gunman as a black man "smaller than the other guy," who was about 5 feet 8 inches tall, and both men were wearing black hoodies. The victim described the gun as small and black, and she recalled seeing a black car nearby just prior to the assault. An investigator documented that the Cobb victim's black Chevrolet Cobalt had been left at the scene. A fingerprint examination revealed Johnson's print on removable items in the Chevrolet and on the exterior of the car. At the DeKalb trial, the Fulton victim identified Johnson as the man with the gun who assaulted her in Fulton County.

Less than 12 hours after the Fulton incident, the crime directly at issue in this case was committed. A woman pumping gas at a DeKalb County gas station had just started the pump and gotten back into her car to put her credit card away, when she heard loud music and turned and found a man standing with a gun pointed at her face from close range. The victim screamed, leaned back in her car, and started kicking the man. The man yelled at her in a violent tone and fired the gun, but the bullet missed the victim. The man then grabbed her arm, pulled her out of the car, and got in. The man rifled through the victim's belongings; took some, including the victim's phone, her Ipod, a business card case with cards inside, and her purse; then exited the victim's car and left in what was later determined to be the Fulton victim's blue

3

Honda Civic. The DeKalb victim described the assailant as black, approximately 5 feet 8 inches tall, and wearing a gray, long-sleeved hooded sweatshirt with the hood not pulled up. Later, the DeKalb victim identified Johnson from a photo line-up with 80% certainty, and she identified him at trial as her assailant with 100% certainty. Police recovered a bullet casing from the scene. A BOLO was issued on the blue Honda Civic.

Two days later at about 9:00 a.m., a Gwinnett officer saw a blue Honda Civic parked in a cemetery in Gwinnett County with a man sitting inside, pulling up his hooded jacket. She reported the vehicle's license tag number to dispatch, approached the car, and asked to see the man's driver's license. The man acted nervous as he pulled out a stack of cards, including his license, from one pocket. The license showed that the man was Johnson. The officer noticed a bulge in a different pocket and suspected that it was a weapon. At about that moment, dispatch advised that the car had been reported stolen, and a backup officer arrived. The second officer asked Johnson to step out of the car, and the first officer patted down the bulging pocket and found a black .22 Beretta handgun. In Johnson's other pocket the officer found a business card holder with some business cards inside, an Ipod, a cell phone, and numerous debit and other cards. One of the debit cards belonged to the Cobb victim.

4

Johnson was arrested by the Gwinnett police and charged with theft by receiving a stolen motor vehicle and possession of a firearm during the commission of a felony. The second officer identified Johnson in court as the person arrested in the cemetery. Johnson pled guilty to the crimes in Gwinnett County.

The bullet casing recovered from the DeKalb County incident was eventually tested, and it proved to have been fired from the gun recovered from Johnson in Gwinnett County. As the investigation ensued, law enforcement officers discovered the connections between the crimes in the four counties, and Johnson was subsequently arrested and charged in DeKalb County. Prior to trial in the DeKalb case, the trial court held a hearing to determine the admissibility of the evidence regarding the Cobb County and Fulton County crimes. The State argued that the Cobb and Fulton incidents were admissible as intrinsic evidence of the DeKalb crimes or as proper extrinsic evidence under OCGA § 24-4-404 (b).[1] Johnson, acting pro se at

---

[1] OCGA § 24-4-404 (b) provides as follows:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

the time, argued that the State could not introduce evidence of the other incidents without making the showings required by OCGA § 24-4-404 (b). The trial court determined that the evidence was admissible, both as intrinsic evidence and as extrinsic evidence under OCGA § 24-4-404 (b). At the beginning of trial, Johnson, then represented by counsel, objected to the evidence of the Cobb and Fulton incidents.

1. Johnson contends the trial court erred by allowing the State to introduce evidence in the DeKalb County action of the crimes that occurred in Cobb County and Fulton County. Evidentiary rulings are reviewed for abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014). We find no abuse of discretion because, as shown below, the crimes in Cobb County and Fulton County were intrinsic to the crimes in DeKalb.

Evidence intrinsic to the charged offense is admissible and not subject to the limitations and prohibition on "other acts" evidence found in OCGA § 24-4-404 (b). See *Smith v. State*, 302 Ga. 717, 725 (4) (808 SE2d 661) (2017); *Williams v. State*, 342 Ga. App. 564, 566 (1) (804 SE2d 668) (2017). "Evidence is intrinsic 'if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3)

inextricably intertwined with the evidence regarding the charged offense.'" *Brooks v. State*, 298 Ga. 722, 726 (2), n.11 (783 SE2d 895) (2016) (quoting *United States v. Utter*, 97 F3d 509, 513 (II) (B) (11th Cir. 1996)); see also *Williams*, 342 Ga. App. at 566 (1). Our Supreme Court has elaborated:

> Evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citation and punctuation omitted.) *Smith*, 302 Ga. at 725 (4); see also *State v. Battle*, 344 Ga. App. 565, 568 (1) (812 SE2d 1) (2018).

In *Williams*, 342 Ga. App. 564, this Court held that evidence of a Newton County carjacking—the second in a three-day, three-carjacking spree—was admissible intrinsic evidence during the trial of the first and third carjackings, both of which occurred in Clayton County. Id. at 567 (1). The Court noted that the Newton County carjacking "established the complete time line of the consecutive carjackings, and items from the first two carjackings were found in the vehicle stolen in the third hijacking." Id. Also, evidence from the third incident tied the defendant to the first and second incident. Id. Thus, the Court concluded, "the Newton County carjacking

7

was inextricably intertwined with the first and third carjackings." Id. And in *Baughns v. State*, 335 Ga. App. 600 (782 SE2d 494) (2016), this Court held that evidence of all eleven crimes "committed in a similar way, within a two-week period . . . in the same area. . . [that] included overlapping participants" were admissible against one of three defendants who was being tried separately, even though that defendant directly participated in only six of the eleven crimes. Id. at 603 (1).

Here, Johnson's fingerprints were found in a car stolen in the Cobb incident and abandoned in the Fulton incident. Johnson himself was found in Gwinnett County in a car stolen in the Fulton incident, where the first car was abandoned, and used by assailants in the DeKalb incident. A small handgun was used in all three assaults, and the same gun that was recovered from Johnson's person in Gwinnett County was fired in the DeKalb incident. Items belonging to the Cobb and DeKalb victims were found in the car occupied by Johnson in Gwinnett. And the Cobb, Fulton, and DeKalb incidents occurred in a three-day span.

We therefore conclude that the Cobb County and Fulton County incidents arose out of the same series of transactions as, and were linked in time and circumstance with, the DeKalb incident and that evidence from those crimes was inextricably intertwined with the evidence from the DeKalb incident; the Cobb and Fulton

8

incidents, therefore, were intrinsic to the DeKalb incident. Accordingly, the trial court did not abuse its discretion by allowing the State to introduce evidence of the Cobb and Fulton incidents in the DeKalb County action. See *Williams*, 342 Ga. App. at 567 (1); *Baughns*, 335 Ga. App. at 603 (1). Given that intrinsic evidence is not subject to the limitations and prohibition on "other acts" evidence found in OCGA § 24-4-404 (b), see *Smith*, 302 Ga. at 725 (4), we need not address whether the trial court erred by concluding that the Cobb and Fulton incidents were also admissible as proper extrinsic evidence under that Code section.

2. Johnson contends the DeKalb trial court erred by admitting evidence "barred by the doctrine of collateral estoppel." Following his arrest in Gwinnett County, Johnson pled guilty in that county to theft by receiving stolen property, i.e., the blue Honda Civic. He argues that Georgia law provides that a person cannot be guilty of both stealing property and theft by receiving the same property. See *Bonner v. State*, 339 Ga. App. 539, 545 (794 SE2d 186) (2016) (conviction of theft by receiving "contains an implicit and necessary finding that [the defendant] was not the individual who stole the car"). He therefore contends that the DeKalb trial court was required to exclude any evidence that he stole the blue Honda Civic.

9

But as we already held during Johnson's earlier appeal of a related issue, the charges against Johnson in DeKalb County—armed robbery, aggravated assault, and possession of a weapon during the commission of a crime—did not require proof that Johnson stole the Honda Civic. Thus the DeKalb jury was not asked to readjudicate whether Johnson stole that vehicle. See generally *Malloy v. State*, 293 Ga. 350, 354 (2) (a) (744 SE2d 778) (2013) ("The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment.") (citation and punctuation omitted). Accordingly, the DeKalb court was not required to exclude evidence suggesting that Johnson stole the blue Honda Civic in Fulton County. See, e.g., *Bradley v. British Fitting Grp.*, 221 Ga. App. 621, 623 (2) (472 SE2d 146) (1996) (no collateral estoppel where issue decided in the previous action is not at issue in second action); see also *Vanderpool v. State*, 244 Ga. App. 804, 807 (3) (536 SE2d 821) (2000) ("The application of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial.") (citation and punctuation omitted). We therefore find no abuse of discretion by the trial court.

3. Finally, Johnson contends the trial court erred by allowing the Cobb County victim to identify Johnson during the DeKalb County trial as the person who assaulted her. He argues that the State's actions in preparing her for her testimony were so impermissibly suggestive that her in-court identification of Johnson as her assailant should not have been allowed. Because Johnson failed to object to the admissibility of the Cobb victim's in-court identification, the argument is deemed waived. See *Partlow v. State*, 346 Ga. App. 473, 485 (5) n.48 (816 SE2d 474) (2018). And, as discussed below, we find no plain error. See *Patch v. State*, 337 Ga. App. 233, 242 (2) (786 SE2d 882) (2016) (applying plain error analysis where defendant failed to object to identification testimony).

There is a four-factor test for plain error:

First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously

11

affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Nicholson*, 321 Ga. App. 314, 317 (1) (739 SE2d 145) (2013) (quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

At the DeKalb trial, during her direct testimony, the Cobb victim was asked if she could identify her assailant. She replied that she could, and she identified Johnson. She testified that she was able to identify him because he favored her nephew. She could not recall, however, whether Johnson had facial hair at the time of the incident because "[h]e had on a jacket, so I really didn't pay that no attention." And, she testified that at the time of the incident, the assailant had his hood pulled down over his forehead.

On cross-examination, the victim testified that during the DeKalb trial but prior to her testimony, the State's attorneys had her look into court through a courtroom-door window to see whether she could identify the defendant. She replied that she could not do so because she could only see the back of his head; but she thought she would be able to identify him as the assailant if she could see his face. She also admitted that she knew that the accused would be sitting at the defense table and that Johnson's lawyer, the only other person sitting there, did not commit the crime.

12

Finally, there was conflicting testimony about whether the Cobb victim ever identified Johnson during a pre-trial photo lineup. The Cobb victim testified that she did, but an officer testified that she did not, and evidence was introduced in support of the officer's testimony.

Absent any taint arising from an improper pre-trial identification, the validity of in-court identifications are determined by "the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." *Ralston v. State*, 251 Ga. 682, 683 (2) (309 SE2d 135) (1983); see also *Ivey v. State*, 277 Ga. 875, 877 (4) (b) (596 SE2d 612) (2004) (same); *Curry v. State*, _ Ga. App. _ (3) (820 SE2d 177) (2018) (same).[2] Here, the Cobb victim was cross-examined extensively about her in-court identification and the surrounding circumstances. Thus, there was no deviation from a legal rule, and we therefore find no plain error.

And even if we were to assume that the Cobb victim did, in fact, identify Johnson in a pre-trial photo lineup, we still find no plain error. "Convictions based on eyewitness identification at trial following a pretrial identification by photograph

---

[2] Compare *Ralston*, 251 Ga. at 683 (2) ("Because pretrial identification procedures occur beyond the immediate supervision of the court, the likelihood of misidentification in such cases increases, and courts have required that pretrial identification procedures comport with certain minimum constitutional requirements in order to insure fairness.").

will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citations and punctuation omitted.) *Marshall v. State*, 285 Ga. 351, 352 (2) (676 SE2d 201) (2009). No such showing has been made. "Moreover, even if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin." (Citations and punctuation omitted.) *Wilson v. State*, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002). Here, the Cobb victim's identification was based, at least in part, on Johnson's resemblance to one of her family members. Any issue of the Cobb victim's credibility in that regard, was for the jury.

*Judgment affirmed. McFadden, P. J., and Markle, J., concur*.