## S11A1979. ALVELO v. THE STATE.
(724 SE2d 377)

BENHAM, Justice.

Appellant Stephen Alvelo was convicted of the malice murder of Walter Cooper, the aggravated assaults and false imprisonments of Melissa Williams and Joey Freitag, possession of a knife during the commission of a crime, and concealing a death.[1] He brings this appeal from the trial court's denial of his amended motion for new trial, following this Court's remand of the case to the trial court. See *Alvelo v. State,* 288 Ga. 437 (704 SE2d 787) (2011).

Walter Cooper's body was found wrapped in a comforter under a mattress on the front porch of a house he shared with appellant and fellow victims Melissa Williams and Joey Freitag. The forensic pathologist who conducted the autopsy on Cooper testified that he died as a result of "multiple sharp force injuries," some of which were consistent with having been inflicted with a knife found in the kitchen and some with having been inflicted with an object like the hatchet found at the scene. Ms. Williams testified that she and Freitag returned to the residence on August 11, 2006, to find appellant, with a "crazy" look in his eyes, cleaning up blood in the kitchen. Appellant grabbed a hatchet from a kitchen countertop and

---

[1] The crimes occurred on August 11, 2006. In January 2009, a Chatham County grand jury returned a true bill of indictment against appellant, charging him with malice murder, felony murder (aggravated assault), three counts of aggravated assault, concealing the death of another, false imprisonment, and possession of a knife during the commission of a crime. Appellant's trial took place August 17-20, 2009, and appellant was found guilty of all charges. Appellant was sentenced to life imprisonment on August 24 for malice murder, and received sentences of 20 years for the aggravated assault of the murder victim, ten years for concealing the death of the murder victim, and ten years for each of the false imprisonments of Williams and Freitag, with these sentences to be served concurrently with the life sentence. Appellant was sentenced to 20 years for each of the aggravated assaults of Williams and Freitag, and five years for possessing a knife during the commission of a crime, with these sentences to be served consecutively to the sentence of life imprisonment. The felony murder conviction was vacated by operation of law. Following the denial on March 30, 2010, of appellant's timely-filed and amended motion for new trial, this Court vacated the judgment of conviction and remanded the case to the trial court for application of "the proper standard in assessing the weight of the evidence as requested by Alvelo in his motion for new trial." *Alvelo v. State,* 288 Ga. 437 (1) (704 SE2d 787) (2011). Following a hearing, the trial court issued an order denying appellant's motion for new trial on July 14, 2011. A timely notice of appeal was filed on August 11, 2011, and the appeal was docketed in this Court to the September 2011 term of court and submitted for decision on the briefs.

ordered Freitag and Williams to kneel on the floor. Armed with the hatchet, appellant approached Freitag and Williams and struck Williams on her head and her spine with the hatchet before she was able to wrest the weapon from him and flee the house. Freitag, whom Williams described as frozen with fear, testified that appellant grabbed him and yanked him down to the floor when Freitag did not obey the order to kneel. Freitag escaped from the house by jumping through a screened window during the struggle between Williams and appellant for control of the hatchet. Both Freitag and Williams testified that appellant was shirtless, and neither of them noticed any wounds on his exposed torso. Police and paramedics who responded to calls for emergency help discovered Cooper's body, and Ms. Williams identified the comforter in which Cooper's body was found as one that was kept in the laundry room.

Appellant told police in a recorded interview played for the jury that Cooper attacked him with appellant's ax and that appellant stabbed Cooper several times with a knife and, upon gaining control of the ax, used it to strike Cooper several times. A forensic specialist for the Savannah-Chatham Metropolitan Police Department testified and surmised, based on the blood-spatter patterns in the house, that the two men fought in the kitchen, where blood from both men was found; that, due to the large amount of blood found under the refrigerator, Cooper was incapacitated near the refrigerator; that, in light of a bloody transfer pattern on a cabinet in the laundry room adjacent to the kitchen, appellant had used a bloodied hand to open the cabinet and retrieve his hatchet which he then used to strike Cooper several times; that, due to bloody drag marks and the saturated blood in the comforter in which appellant was found, that appellant dragged Cooper's body on the comforter to the front porch and there placed the comforter and body under a mattress.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the malice murder of Cooper, the concealment of Cooper's death, the aggravated assaults and false imprisonments of Williams and Freitag, and the possession of a knife during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant argues that his conviction and sentence for the aggravated assault of Cooper should be vacated because the conviction merged as a matter of fact into the conviction for the malice murder of Cooper. The indictment charged appellant with assaulting Cooper with a knife and a hatchet, objects likely to result in serious bodily injury when used offensively against another. The malice murder count of the indictment charged appellant with causing Cooper's death with malice aforethought by use of a knife and a hatchet. As stated earlier, the forensic pathologist found the cause of

death to be "multiple sharp force injuries." The State argues the separate conviction for aggravated assault can survive because the forensic pathologist noted that the victim sustained both lethal and non-lethal injuries and the numerous wounds suffered by the victim were not inflicted in quick succession because the blood-spatter evidence established the victim suffered his injuries in several rooms of the house.

OCGA § 16-1-7 (a) prohibits multiple convictions and punishments for the same offense (*Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006)), and subsection (a) (1) prohibits a defendant from being convicted of more than one crime if one crime is included in another. The crime of aggravated assault is included in the crime of malice murder when the former "is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [the latter]." OCGA § 16-1-6 (1). The aggravated assault that results in the victim's death merges as a matter of fact into the murder conviction. When a victim has sustained multiple wounds, the question arises whether one of the injuries is an aggravated assault separate and distinct from the assault that caused the victim's death.

> When a victim suffers multiple wounds inflicted in quick succession, each infliction of injury does not constitute a separate assault. [Cit.] However, a separate judgment of conviction and sentence is authorized if a defendant commits an aggravated assault independent of the act which caused the victim's death. [Cit.] When a series of stab wounds are separated by a "deliberate interval" and a non-fatal injury is sustained prior to the interval and a fatal injury sustained after the interval, the earlier, non-fatal infliction of injury can serve to support a conviction for aggravated assault. [Cit.]

*Culpepper v. State*, 289 Ga. 736 (2) (a) (715 SE2d 155) (2011). See also *Mikell v. State*, 286 Ga. 722 (3) (690 SE2d 858) (2010); *Coleman v. State*, 286 Ga. 291 (3) (687 SE2d 427) (2009). The forensic pathologist who conducted the autopsy catalogued the victim's wounds as "chop injuries" that fractured the victim's skull and incapacitated him and were likely inflicted with the hatchet, "punctures" and "superficial," "deep," and "very deep" incisions and stab wounds that were inflicted by knives. The pathologist did not testify as to the order in which the wounds were inflicted and did not describe any specific wound as being a fatal injury, concluding that the victim's cause of death was due to "multiple sharp force injuries." In light of the pathologist's testimony and in the absence

of evidence that the victim suffered a non-fatal injury prior to a deliberate interval in the attack upon him, and a fatal injury thereafter, appellant's conviction for aggravated assault of the victim merged into the conviction for malice murder of the victim. Accordingly, the conviction and sentence for aggravated assault of the murder victim must be vacated and the case remanded for resentencing. Cf. *Culpepper v. State*, supra, 289 Ga. 736; *Mikell v. State*, supra, 286 Ga. 722 (3); *Coleman v. State*, supra, 286 Ga. 291 (3).

3. At trial, appellant asserted he was not guilty by reason of insanity and on appeal contends the judgment of conviction should be overturned because he proved by a preponderance of the evidence he was insane at the time the crimes were committed.

> In Georgia, a person is not legally insane simply because [he] suffers from schizophrenia or a psychosis. [Cit.] Rather, a defendant is not guilty by reason of insanity if, at the time of the criminal act, the defendant did not "have the mental capacity to distinguish between right and wrong in relation to such act" or a mental disease caused "a delusional compulsion that overmastered his will to resist committing the crime." OCGA §§ 16-3-2, 16-3-3. . . . When a delusional compulsion is the basis of an insanity defense, the delusion must be one that, if it had been true, would have justified the defendant's actions. [Cit.] . . . Defendants are presumed sane [cit.], and a defendant claiming insanity bears the burden to prove [his] insanity by a preponderance of the evidence. [Cit.]

*Boswell v. State*, 275 Ga. 689 (1), (2) (572 SE2d 565) (2002). Appellant introduced his medical history that reflected a history of repeated hospitalization in mental health facilities, and the expert opinion of a clinical and forensic psychologist that appellant was psychotic and suffering from paranoid schizophrenia. The State presented the testimony of a forensic psychologist that appellant's efforts to clean up the blood and hide the body indicated appellant knew the wrongfulness of his actions, his statement to police that he acted in self-defense was a rational motive for appellant's escalating fight with Cooper, and that the expert saw no evidence appellant was delusional at the time of the crimes.

> Because the jury rejected [appellant's] insanity defense at trial, we must determine on appeal "whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he

was insane at the time of the crime." [Cit.] Unless the evidence of insanity is overwhelming, the jury's determination that the defendant was sane should be upheld. [Cit.]

Id. at 691. In light of the testimony of the State's expert, there was evidence from which a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime. The trial court did not err when it entered judgment on the jury's verdicts. See *Rodriguez v. State*, 271 Ga. 40 (1) (518 SE2d 131) (1999).

4. Appellant sees error in the trial court's denial of his motion in limine regarding two photographs of the deceased victim at the scene of the crimes and several pre-autopsy photographs depicting the injuries the victim sustained. Appellant argues the prejudicial effect of the photos outweighed their probative value in light of appellant's offer to stipulate that he had caused Cooper's death. The State argues the photos were necessary to refute appellant's recorded statements to police that he had acted in self-defense and his defense at trial that he acted pursuant to a delusional compulsion, with the photos showing that appellant's acts were not justified by the delusion under which he was purportedly laboring.

" 'When a trial court is faced with the challenge that the probative value of evidence is outweighed by its tendency to unduly prejudice the jury, it must exercise it discretion in determining admissibility.' [Cit.]" *Stokes v. State*, 289 Ga. 702 (4) (715 SE2d 81) (2011). Generally, pre-autopsy photographs are admissible to illustrate the nature and extent of a murder victim's wounds and the location of the body at the scene of the crimes. *Floyd v. State*, 272 Ga. 65 (4) (525 SE2d 683) (2000). Photos depicting the location and nature of the victim's wounds are relevant and material, and therefore admissible. *Crozier v. State*, 263 Ga. 866 (2) (440 SE2d 635) (1994). See also *Respress v. State*, 249 Ga. 731 (3) (293 SE2d 319) (1982) (photos of victim's wounds are relevant to issue related to justification). The trial court did not abuse its discretion by admitting the photographs.

5. The trial court instructed the jury on the law of voluntary intoxication at the request of the State, and did not charge the jury sua sponte on the legal theory of "no duty to retreat," i.e., that if one who is claiming self-defense was not the original aggressor he has no duty to retreat. Appellant believes the trial court erred with regard to both charges.

The trial court gave the pattern jury charge on voluntary intoxication, instructing the jury that voluntary intoxication is not

an excuse for any criminal act and that,

> if a person's mind, when not affected by intoxicants, is capable of distinguishing between right and wrong as well as of reasoning and acting rationally, and the person voluntarily deprives himself of reason by consuming intoxicants and commits the criminal act while under the influence of such intoxicants, the person is criminally responsible for such acts to the same extent as if the person were sober.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.60.10 (4th ed. 2007). At trial, appellant objected to the charge on the ground that there was no evidence to support it. On appeal, appellant raises two attacks on the content of the charge, neither of which was raised at trial. He contends the trial court erred in giving the charge without informing the jury that a defendant's voluntary intoxication is not a factor when the defendant is insane when sober. See *Choice v. State*, 31 Ga. 424, 472 (1860) ("[I]f a man is insane when sober, the fact that he increased the insanity, by the super-added excitement of liquor, makes no difference. An insane person is irresponsible, whether drunk or sober."). Appellant also argues that the charge on voluntary intoxication was incomplete because it referred to the test for insanity under OCGA § 16-3-2 ("the person did not have mental capacity to distinguish between right and wrong . . ."), but not the test for delusional compulsion set forth in OCGA § 16-3-3 ("the person, because of mental disease . . . acted as he did because of a delusional compulsion. . . ."). With regard to no duty to retreat, appellant neither requested a charge on the subject nor objected to the trial court's failure to give such a charge. On appeal he contends the trial court committed reversible error for failing to include a charge sua sponte on no duty to retreat. Pursuant to OCGA § 17-8-58, we review the appellate arguments concerning the jury charge under the "plain error" rule.

"Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." OCGA § 17-8-58 (a). Subsection (b) of OCGA § 17-8-58 provides that failure to object pursuant to subsection (a) precludes appellate review of that portion of the jury charge except in cases of plain error. Subsection (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial, provided the enumeration of error is properly enumerated and argued on appeal. *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011). "Plain error" requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must

have affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings. Stated more succinctly, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (Citation and punctuation omitted.) Id. at 33 (2) (a). If the failure to give an instruction is shown to constitute such an error, the appellate court may remedy the error by exercising its discretion if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Id.

Neither the voluntary intoxication charge given nor the failure to give an instruction on no duty to retreat constitutes plain error. The charge on voluntary intoxication states as a prerequisite to its applicability the fact that the person is legally sane, i.e., that the person's mind is capable of distinguishing right from wrong and of reasoning and acting rationally, when not affected by intoxicants. Consequently, it does not meet the first prong of the "plain error" test — there was no clear or obvious legal error or defect in the trial court's failure to expressly inform the jury that voluntary intoxication is not a factor when a person is insane. Assuming that the failure to include a specific reference in the voluntary intoxication charge to the delusional compulsion standard constitutes an error or defect and meets the first prong of "plain error," it does not pass the second prong — it is not one that is clear or obvious since whether the reference in the charge to "capable of . . . reasoning and acting rationally" was applicable to delusional compulsion could be subject to reasonable dispute. Finally, even assuming the charge on no duty to retreat should have been given sua sponte by the trial court, the failure to give the charge does not amount to plain error since self-defense was not appellant's sole defense (compare *Hill v. State*, 310 Ga. App. 695 (2) (713 SE2d 891) (2011)), and the trial court instructed the jury on the law of justification and self-defense. See *Edmonds v. State*, 275 Ga. 450 (4) (569 SE2d 530) (2002).

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

DECIDED FEBRUARY 27, 2012.

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Julayaun M. Waters, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary K. Ware, Assistant Attorney General*, for appellee.