FINAL COPY
294 Ga. 752

S13A1910.  WALKER v. THE STATE.

HINES, Presiding Justice.

Joshua Jarrod Walker appeals from his convictions and sentences for the crimes of felony murder while in the commission of attempted armed robbery, armed robbery, and possession of a firearm during the commission of a felony, all in connection with the slaying of Michael Algreen and the armed robbery of Julie Looper.  For the reasons that follow, we affirm.[1]

---

[1] The crimes were committed on January 22, 2006.  On September 16, 2009, a Chatham County grand jury indicted Walker, along with Deshaun Kinlaw, for the malice murder of Algreen, and indicted Walker, Kinlaw, and Quincy Lavant for: the felony murder of Algreen while in the commission of aggravated assault; the felony murder of Algreen while in the commission of burglary; the felony murder of Algreen while in the commission of attempted armed robbery; the armed robbery of Looper; the possession of a firearm during the commission of the crime of "murder/felony murder"; and the possession of a firearm during the commission of the crime of armed robbery.  Walker was tried alone before a jury March 7-10, 2011, but the jury was unable to reach any verdict, and a mistrial was declared.  Walker was tried before a different jury August 8-15, 2012, and found guilty of felony murder while in the commission of attempted armed robbery, and armed robbery; he was also found guilty of both counts of possession of a firearm during the commission of a felony, but acquitted of the other charges.  On August 21, 2012, he was sentenced to life in prison for felony murder, and consecutive terms of 20 years in prison for armed robbery and five years in prison for possession of a firearm during the commission of a felony; the court determined that the other charge of possession of a firearm during the commission of a felony merged with a charge upon which he was also sentenced.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993).  Walker moved for a new trial on August 31, 2012; he amended the motion on September 4, 2012, and again on April 9, 2013.  On June 12, 2013, the motion, as amended, was denied.  On July 10, 2013, Walker filed a notice of appeal; the appeal was docketed in this Court for the September 2013 term and submitted for decision on the briefs.

Construed to support the verdicts, the evidence showed that Walker was selling illegal drugs from a location across the street from the apartment complex where Algreen and Looper lived. Algreen and Looper sought to buy drugs from him, and Walker went with them back to their apartment, and produced powder cocaine for their purchase. Algreen expressed a preference for crack cocaine and showed Walker a quantity of cash; Walker said he would try to obtain some crack cocaine.

Walker went to a nightclub with Deshaun Kinlaw and Quincy Lavant, and then went with them to the home in which they lived. There, Walker reported that Algreen had $3,500 to $4,500 in cash and declared his intention to rob Algreen and Looper; Kinlaw supplied a handgun to Walker and decided to accompany him, and Lavant joined them. The three men went to Lavant's car, and Lavant drove to Walker's home where another pistol was retrieved. Lavant then drove to the apartment complex where Algreen and Looper lived; Lavant stayed with the car while Walker and Kinlaw went into the complex. There, using T-shirts for masks, Walker knocked on the door of the apartment; when Algreen opened the door, the men forced their way inside. Walker and Kinlaw demanded money, and Looper gave Kinlaw $200; when he reached for it, his

2

mask slipped and she noted a gap in his front teeth so distinctive as to be identifying. As Walker faced Algreen, demanding money, Algreen said he did not have any and began to extract items from his pockets. Looper told Algreen to "just give them the money," and Walker shot Algreen multiple times with a .22 pistol. Walker and Kinlaw ran from the apartment, and Algreen went out the back door of the apartment, where he collapsed in the courtyard of the complex; he later died of multiple gunshot wounds.

Walker and Kinlaw ran to Lavant's car and entered it. Kinlaw asked Walker why he shot Algreen; Walker replied that Algreen "didn't wanna give up his money." Lavant then drove the three of them to Florida where they attempted to establish an alibi by being seen on a store surveillance camera and buying some parakeets at a market which required the men to put their names and addresses in a registry.

1. The evidence authorized the jury to find Walker guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Walker contends that his trial counsel failed to provide effective representation in several respects. In order to prevail on such a claim, he must

show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Walker contends that trial counsel was ineffective in failing to object when the State posed a hypothetical question to a prospective juror during voir dire. The incident occurred when the State asked the panel of prospective jurors

4

whether they could concern themselves only with guilt or innocence, and not punishment; one juror asked the State to rephrase the question. The State responded:

> Okay. Here's . . . here's an example. Consider there's a very poor young girl who steals some bread out of desperation to feed her hungry child. Can you make a distinction and make a decision only as to whether or not she stole the bread without considering the possible punishment? That means you only look at strictly what the law and the facts say that person did, not what the punishment will be or could be.

Walker urges that counsel should have objected at this point.

As Walker recognizes, there is no per se rule against hypothetical questions during voir dire of prospective jurors. This Court has noted that, under Uniform Superior Court Rule 10.1,

> [h]ypothetical questions are discouraged, but may be allowed in the discretion of the court. It is improper to ask how a juror would act in certain contingencies or on a certain hypothetical state of facts. No question shall be framed so as to require a response from a juror which might amount to a prejudgment of the action. [Cit.]

*Ellington v. State*, 292 Ga. 109, 127 (7) (b) (735 SE2d 736) (2012). The question posed by the State did not in any way call for a response amounting to a prejudgment of the State's prosecution of Walker. Further, although

> [h]ypothetical voir dire questions are not per se improper [cit.] . . .

5

a trial judge should be cautious in allowing counsel to propound questions which ask the juror to assume that certain facts will be proven. Such questions tend to improperly influence jurors. [Cit.]

*Waters v. State*, 248 Ga. 355, 365 (3) (283 SE2d 238) (1981). No such assumption was made in the State's hypothetical. Rather, it simply responded to the prospective juror's question. Accordingly, Walker fails to establish either that the failure to object when the question was posed constituted deficient performance, or that doing so would have been successful so as to create a reasonable probability of a different result. *Smith v. Francis*, supra; *Strickland*, supra.

(b) Walker testified in his own defense, and on cross-examination, the State impeached Walker by introducing three prior convictions of his. Trial counsel did not object to the introduction of the convictions, and Walker submits that this was error, contending that trial counsel should have objected that their prejudicial effect upon Walker substantially outweighed their probative value, citing former OCGA § 24-9-84.1 (a) (2).[2]

---

[2] Former OCGA § 24-9-84.1 read, in relevant part:

(a) *General rule.* For the purpose of attacking the credibility of a witness, or of the defendant, if the defendant testifies:
(1) Evidence that a witness has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the

The trial court did not err in denying the motion for new trial on this ground. Although Walker contends that the convictions at issue were not crimes involving dishonesty or the making of a false statement, there is no such requirement under OCGA § 24-9-84.1 (a) (2). See *Whitaker v. State*, 283 Ga. 521, 523 (2) (661 SE2d 557) (2008). And, Walker's credibility was clearly an issue at trial; he testified that he was at his sister's home in Florida at the time of the killing, and that he had not returned to Savannah between Christmas and his mother's funeral a month after the killing, despite the fact that his mother

law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness;

(2) Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant; and

(3) Evidence that any witness or the defendant has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense.

(b) *Time limit.* Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

was terminally ill and his sister traveled from Florida to see her before she died, testimony that was directly contrary to that of multiple witnesses who placed him at the scene of the killing. It would not have been an abuse of discretion to deny the motion to exclude the convictions, and Walker cannot show prejudice resulting from the failure to make the argument he now contends should have been made at trial. See *Williams v. State*, 292 Ga. 844, 852 (3) (e) (742 SE2d 445) (2013). See also *Robinson v. State*, 312 Ga. App. 110, 113 (2) (717 SE2d 694) (2011) (Noting that when conduct for which the defendant is tried is dissimilar to that involved in the prior convictions, the danger of prejudice is lessened.)

(c) In Walker's prior trial on these charges, a mistrial was declared when the jury could not reach a unanimous verdict. At Walker's second trial, which resulted in the convictions and sentences now on appeal, Looper testified in rebuttal to Walker's alibi defense that he was the person who sold cocaine to her and Algreen shortly before the killing.[3] Walker contends that trial counsel should have impeached her with her testimony from the first trial to the effect

---

[3] During her testimony in the State's case-in-chief, she generally referred to the person who sold the drugs.

8

that she had not ever identified Walker as the drug seller, instead only giving a description of the seller. However, counsel testified during the hearing on the motion for new trial that he did not pursue this course of impeachment because, although not overly detailed, the description she gave matched Walker's appearance. Counsel further testified that he believed that the most effective course of action was to elicit testimony from Looper that in the six-and-one-half years since Algreen was killed, she had not once identified Walker as the man who sold her and Algreen the drugs.[4]

Walker fails to demonstrate deficient performance by trial counsel as to this issue. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *Freeman v. State*, 284 Ga. 830, 835 (4) (672 SE2d 644) (2009) (Citation omitted.). In light of the cross-examination of Looper that counsel conducted, Walker fails to show that counsel's representation fell outside the wide range of reasonable professional conduct, or that his decisions were not made in the exercise of reasonable professional judgment. See *Smith v. Francis*, supra. See also *Romer*

---

[4] Counsel also elicited testimony from Looper that she had been drinking and likely mixed Xanax and alcohol before the drug purchase.

9

*v. State*, 293 Ga. 339, 344 (3) (a) (745 SE2d 637) (2013).

(d) Walker contends that counsel should have elicited from Lavant and Kinlaw testimony that they faced considerable time in prison if they did not agree to testify for the State against Walker; essentially, Walker asserts that the men should have specifically testified to a computation of prison time that they might have received, and then compared that to what they actually received. Trial counsel elicited from each man the testimony that his charges were significantly reduced in exchange for his testimony in Walker's prosecution, including the elimination of the charges of murder. At the hearing on the motion for new trial, Walker failed to establish what either Lavant or Kinlaw might have testified to in response to the questions he now contends should have been posed, and thus fails to establish a reasonable probability that the result of his trial would have been different if counsel had posed additional questions. *Smith v. State*, 292 Ga. 588, 592 (4) (b) (740 SE2d 129) (2013).

(e) Finally, Walker contends that trial counsel should have impeached various witnesses with: prior hearsay testimony; testimony that was cumulative of testimony from other witnesses; testimony from Walker's prior trial that he contends was inconsistent with that given at his second trial; and testimony from

10

the prior trial that he argues would have impeached witness testimony to a greater extent than the impeachment that counsel elicited at the second trial. He argues that, had all these impeachment efforts been undertaken, it would have increased the chances of the jury rejecting the testimony of these damaging witnesses, and strengthened counsel's closing argument. However, trial counsel engaged in extensive impeachment of witnesses, and it cannot be said that in doing so counsel acted beyond the bounds of reasonable conduct and judgment; thus, Walker fails to show deficient performance on trial counsel's part. See *Smith v. Francis*, supra. "The fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable. Effectiveness of trial counsel is not judged by hindsight or result." *Freeman*, supra (Citations and punctuation omitted.).

Judgments affirmed. All the Justices concur, except Hunstein, J., who concurs in the judgment only as to Division 2 (b).

Decided March 10, 2014.

Murder. Chatham Superior Court. Before Judge Morse.

Steven L. Sparger, for appellant.

Meg E. Heap, District Attorney, Isabel M. Pauley, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General, for appellee.