296 Ga. 528
FINAL COPY

S14A1419.  HITES v. THE STATE.

HINES, Presiding Justice.

John Thurston Hites appeals the denial of his motion for new trial, as amended, and his conviction for felony murder while in the commission of aggravated assault in connection with the fatal stabbing of Che Mitchem.  He challenges the introduction of evidence of his prior conviction, the refusal to allow him to testify about certain alleged statements of the victim, and the effectiveness of his trial counsel.  Finding the challenges to be unavailing, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. At the time of the murder, Che Mitchem was living with his wife, Linda Mitchem Schultz, in Atkinson County.  Schultz had previously been married to Hites, and

---

[1] The murder occurred on August 22, 2010.  On April 4, 2011, an Atkinson County grand jury returned an indictment against Hites charging him with malice murder, felony murder while in the commission of aggravated assault, and aggravated assault.  He was tried before a jury November 16-17, 2011, and was found not guilty of malice murder, but guilty of felony murder and aggravated assault.  On November 17, 2011, Hites was sentenced to life in prison for the felony murder; the aggravated assault verdict merged for the purpose of sentencing.  A motion for new trial was filed on November 22, 2011, and an amended motion for new trial was filed on  October 25, 2013.  The motion for new trial, as amended, was denied on February 7, 2014.  A notice of appeal was filed on March 10, 2014, and the case was docketed in this Court's  September 2014 term.  The appeal was submitted for decision on the briefs.

Hites was then dating Schultz's sister, Lisa Hamlin. The day before the murder, on August 21, 2010, Hamlin became upset with Schultz, regarding some remarks Schultz had made concerning Hamlin and Hites's relationship. Hamlin and Hites walked to Schultz and Mitchem's home; before going, Hamlin said that she was "going to beat [Schultz's] ass," and Hites stated that he was accompanying Hamlin and "didn't want to have to kill somebody for hurting [Hamlin]." Hamlin knocked on her sister's front door, and Schultz opened it and came out onto the porch; the two sisters immediately began to fight. Schultz fell to the ground, and Hamlin got on top of her. Mitchem emerged from the house and pulled Hamlin off of Shultz. Hites then "came over" and began to fight with Mitchem. Hites pulled out a knife and stabbed Mitchem repeatedly. Mitchem fell to the ground, bleeding profusely. Shultz called 911. Hites fled.

Mitchem died as the result of multiple sharp force injuries. At the time of the fatal stabbing, neither Mitchem nor the two women were wielding a knife or other weapon. Agents with the Georgia Bureau of Investigation ("GBI") arrived at the scene and found a folding knife soaked with Mitchem's blood and located in the grass in the direction in which Hites had fled. That evening, Hites

2

texted former in-laws that he had stabbed Mitchem "because [Mitchem] grabbed a hold of [Hamlin]," and that he was not sure how many times he had stabbed Mitchem, "but several." Hites asked for help getting clean clothes, but then warned them not to come to get him or they would be an "accessory to."

1. The evidence was sufficient to enable a rational trier of fact to find Hites guilty beyond a reasonable doubt of the felony murder of Mitchem while in the commission of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hites contends that the trial court erred in allowing the State, over objection, to introduce into evidence a certified copy of his 1994 federal conviction for mail fraud,[2] without the State providing "proper notice" to him as required by former OCGA § 24-9-84.1 (b),[3] that is, that the State introduced

---

[2] Hites was charged with and pled guilty to the offense of mail fraud pursuant to 18 USC § 1341.

[3] This case was tried prior to January 1, 2013; therefore, Georgia's new Evidence Code was not applicable to Hites's trial. See Ga. L. 2011, pp. 99, 214, § 101. Impeachment by prior convictions under the new Evidence Code is governed by OCGA § 24-6-609.
    Former OCGA § 24-9-84.1 (b) in effect at the time of Hites's 2011 trial provided:
        *Time limit*. Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, is not admissible unless the proponent gives

3

the conviction without any notice or testimony as to its age. However, when the State asked Hites on cross-examination to "tell" about his conviction in federal court, Hites did not object to any lack of notice; therefore, the alleged error with regard to notice is deemed waived. See *Young v. State*, 290 Ga. 392, 400 (9) (721 SE2d 855) (2012) (alleged error of deficient notice that prior convictions would be entered into evidence during presentence hearing deemed waived when no objection made at hearing). Waiver in the circumstance in this case comports with the basic tenet that,

> [i]n order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground.

*Hall v. State*, 292 Ga. 701, 702 (2) (743 SE2d 6) (2013) (Citation and punctuation omitted.)[4]

---

to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

[4]Although not enumerated as error, Hites complains in argument, relying on *Abercrombie v. State*, 297 Ga. App. 522 (677 SE2d 719) (2009), that the trial court permitted the evidence of his prior conviction without performing any balancing test or "discussing the issue," as required by former OCGA § 24-9-84.1 (a) (2). This Court has overruled *Abercrombie* to the extent that it held that former OCGA § 24-9-84.1 (a) (2) required that the trial court list the specific factors it considered in ruling on the probity of convictions that were not more than ten years old. See *Clay v. State*, 290 Ga. 822, 836-837 (3) (B) (725 SE2d 260) (2012). But, inasmuch as Hites's prior federal conviction was more than ten years old at the time of the trial on the present charges, admission of evidence of the conviction was governed by former OCGA § 24-9-84.1 (b). And, this

4

3. Hites next contends that the trial court erred when it refused to allow him to testify as to "what Mitchem had said at the time he was stabbed as it was part of the res gestae."

It appears that Hites is complaining about the trial court sustaining an objection by the State to Hites testifying about what he heard Mitchem uttering before Mitchem emerged from the house and just prior to the fatal encounter.[5]

Court has determined that a trial court is to make an on-the-record finding of the specific facts and circumstances upon which it relies in deciding that the probative value of a prior conviction that is more than ten years old substantially outweighs its prejudicial effect before it permits the evidence of the conviction for impeachment purposes under OCGA § 24-9-84.1(b). *Clay v. State*, supra at 838 (3) (B). Even so, Hites did not object at trial to any failure by the trial court to articulate a balancing test or to "discuss" the matter pursuant to any provision of former OCGA § 24-9-84.1. The defense objection was that the State had not met its burden to show that the probative value of the federal conviction "far outweigh[ed] the prejudicial value," and that Hites "certainly [had] not put his character into evidence." Consequently, his complaint that the evidence of his prior conviction was admitted without sufficient discussion, even if enumerated as error, would be waived in the present appeal. *Hall v. State*, supra at 702 (2).

[5] Hites fails to provide any citation to the trial transcript to guide this Court to the sought testimony. The State highlights the following exchange.

HITES: [Schultz] punched – I'm sorry, [Hamlin] punched [Schultz] in the face at least one time.
DEFENSE COUNSEL: And you could see this?
HITES: Yes. They were just right underneath the – the porch light that I think you guys saw.
DEFENSE COUNSEL: Did anything else happen?
HITES: Yes, immediately then I – I heard [Mitchem] from within the house, and he – he's just, he's like he's in a complete and total rage.
STATE: All right, Judge, obviously, anything that [Mitchem] said or did, he's deceased, so anything he said is going to be hearsay and we would object and ask that the witness be instructed.
COURT: [Defense counsel]?
DEFENSE COUNSEL: Your honor, I think it would be part of the res gestae, anything that went on.
STATE: Judge, as the Court well knows, the law is very clear that the defendant who caused the death of another person can't then state what that person he killed said because

5

The res gestae exception to hearsay, at the time of Hites's trial, was codified in former OCGA § 24-3-3, and provided that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."[6] In general, whether the res gestae exception should apply is dependent on several factors including the timing of the statement, whether the declarant was able to deliberate about the statement, and whether the declarant was influenced by others prior to making the statement; there must also be some evidence that the declarant had personal knowledge regarding the facts in the statement and that the declarant was not merely relaying information from another person. *Thomas v. State*, 284 Ga. 540, 544 (2) (668 SE2d 711) (2008). There is little question that the testimony sought by Hites was self-serving hearsay, and

there's no way of contradicting it, the victim is not here to contradict it.
    COURT: I will sustain the objection –

[6] OCGA § 24-8-803 of the new Evidence Code does not use the term "res gestae." *Johnson v. State*, 292 Ga. 785, 789 (4), n. 4 (741 SE2d 627) (2013). It addresses the admission of an "excited utterance," which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[.]" OCGA § 24-8-803 (2); see *Wilson v. State*, 295 Ga. 84, 87, n. 5 (757 SE2d 825) (2014).

therefore, hardly free from "suspicion of device or afterthought." Former OCGA § 24-3-3. But, in the situation in which the alleged statements by the victim are so directly connected to the incident involving the killing of the victim, such statements are admissible as a part of the res gestae and to explain the conduct of the deceased victim a few minutes before the fatal attack by the defendant. *Rector v. State*, 285 Ga. 714, 715 (3) (681 SE2d 157) (2009). Thus, it was error to refuse to allow Hites to give such testimony.

However, that is not the end of the inquiry because a trial court's ruling with regard to the admissibility of evidence as part of the res gestae is subject to a harmless error analysis. *Johnson v. State*, 292 Ga. 785, 789 (4) (741 SE2d 627) (2013). Applying such analysis, the error must be deemed harmless in this case. Hites gives no hint as to what statements by the victim he was unable to recount. But, it is plain from the trial colloquy and the hearing on the motion for new trial that Hites was attempting to buttress his claim of self-defense by showing that the victim was dangerously enraged just prior to the fatal stabbing. And, Hites was permitted to give ample testimony to that effect.[7] Thus, the error

---

[7] Following the ruling at issue, Hites testified, inter alia, that when Mitchem came out of the house and onto the porch and just before his alleged physical attack on Hites, Mitchem "was beside himself with anger, and he landed on the porch, he grabs – he grabs [Hamlin] and he punches her, he punches the s _ _ _ out of her is what he does, and then he grabs her and he yanks her up off of

7

in the evidentiary ruling does not provide a basis for reversal.

4. Lastly, Hites contends that his trial counsel was ineffective for failing to sufficiently raise his claim of self-defense and to subpoena "material" phone records. In order for Hites to prevail on his claim that his trial counsel was ineffective, he has to show, under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that his counsel's performance was deficient and that, but for the deficiency, there was a reasonable probability of an outcome at trial that was more favorable to him. *Allen v. State*, 293 Ga. 626, 627(2) (748 SE2d 881) (2013). To satisfy the showing of deficiency under *Strickland*, Hites has to overcome the strong presumption that his trial counsel's performance was within the broad range of reasonable professional conduct, the reasonableness of which is judged from counsel's perspective at the time of trial and under the particular circumstances then existing in the case. Id. The second showing of prejudice requires that he demonstrate the reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. Hites does not make these showings.

Hites states that his "chief concern" is that his trial counsel "never

_____

[Schultz] like a ragdoll and he's about to body slam her . . . . "

8

followed-up," on his claim of self-defense by offering testimony at trial from his sister, Littrell, and/or by subpoenaing phone records regarding evidence that Hites acted in self-defense, notably evidence that Littrell had been sent texts from Hites's former sister-in-law, Michelle Register, to the effect that Hites had acted in self-defense. Hites urges that with this documentation of the texts, the jury would have had the opportunity to see that Schultz's and Hamlin's versions of events at the time of trial differed from what they said the night of the incident. Hites further complains that trial counsel did not directly question Schultz and Hamlin regarding Hites's self-defense claim.

To begin with, contrary to what Hites now asserts, at the motion-for-new-trial hearing Littrell testified that the text or texts at issue were from Hamlin, not from Register.[8] But more significantly, at the hearing, Hites's trial counsel testified that Littrell was not called to testify at trial because she could not "add anything" to the events of that night inasmuch as she was not there and did not know what transpired among the participants; that Littrell wanted Hites's defense to be that either Schultz or Hamlin actually killed Mitchem and that it

_____

[8] Register testified at trial that Hites had texted her that he stabbed Mitchem because Mitchem had grabbed Hamlin, and copies of the texts were introduced into evidence.

9

was discussed so many times with Hites that for a time Hites instructed counsel not to have any further communication with Littrell; that if a text had been sent by Hamlin to Littrell as contended, it would have been on Littrell's phone and she could have shown it to counsel, but Littrell did not do so; and that counsel developed a self-defense theory together with Hites. Also, the trial transcript reveals that defense counsel did indeed attempt to support such theory during the cross-examinations of both Hamlin and Schultz. The State's forensic pathologist was also cross-examined regarding the proximity of Hites and Mitchem during the fight and the nature of Mitchem's wounds in an attempt to further Hites's claim of self-defense. The decision of whether to call a witness to testify at trial is a matter of trial strategy and tactics, and such a strategic and tactical decision cannot be deemed deficient performance unless the decision is so unreasonable that no competent attorney would have made it under similar circumstances. *Miller v. State*, 296 Ga. 9, 12 (4) (a) (764 SE2d 823) (2014). The scope of cross-examination is likewise grounded in trial tactics and strategy, and consequently, will rarely support a claim of ineffective assistance of counsel. *Walker v. State*, 294 Ga. 752, 756 (2) ( c) (755 SE2d 790) (2014). Hites simply fails to show that trial counsel's representation was outside the wide range of

reasonable professional conduct, or that counsel's decisions were not made in the exercise of reasonable professional judgment. Id. at 757 (2) (c).

Insofar as Hites asserts that trial counsel's alleged errors, considered collectively, show that the representation was so deficient as to constitute ineffective assistance, such assertion has no merit because Hites has not demonstrated the ineffectiveness of trial counsel in any of the ways claimed. *Hoffler v. State*, 292 Ga. 537, 543 (5) (739 SE2d 362) (2013).

Judgments affirmed. All the Justices concur, except Hunstein, J., who concurs in judgment only as to Division 2.

Decided February 16, 2015.

Murder. Atkinson Superior Court. Before Judge McClain.

Larry M. Johnson, for appellant.

Richard L. Perryman III, District Attorney, Patrick Warren, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christian A. Fuller, Assistant Attorney General, for appellee.