297 Ga. 126
FINAL COPY

S15A0589.  GUTHRIDGE v. THE STATE.

HINES, Presiding Justice.

Takeyia Kentay Guthridge appeals her convictions of malice murder and aggravated assault in connection with the fatal stabbing of her mother, Deloise Adu, and the assault with a knife of her stepbrother, Frank Adu. She challenges certain instructions to the jury, the effectiveness of her trial counsel, and the sufficiency of the evidence of her guilt.  Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. In January 2012, Guthridge came to live with her mother ("Mother") in her home

---

[1]The crimes occurred on June 11, 2012.  On January 10, 2013, a Clayton County grand jury returned an indictment against Guthridge: Count 1 –  malice murder of Deloise Adu; Count 2 – felony murder by stabbing Deloise Adu; Count 3 – aggravated assault with intent to murder Deloise Adu; Count 4 – aggravated assault with a knife of Deloise Adu; and Count 5 –  aggravated assault with a knife of Frank Adu.  Guthridge was tried before a jury August 19-21, 2013, and found guilty of all charges.  On August 23, 2013, she was sentenced to life in prison without the possibility of parole on Count 1 and a concurrent term of 20 years in prison on Count 5; the verdicts on Counts 3 and 4 were found to merge with the verdict on Count 1 for the purpose of sentencing and the verdict on Count 2 stood vacated by operation of law. Trial counsel filed a motion for new trial on Guthridge's behalf on August 26, 2013, and new counsel filed an amended motion for new trial on July 29, 2014. The motion for new trial, as amended, was denied on September 5, 2014.  A notice of appeal was filed on September 22, 2014, and the case was docketed in this Court's January 2015 term.  The appeal was submitted for decision on the briefs.

in Clayton County. After about six months, tension developed between Guthridge and Mother because Guthridge was unemployed but not looking for a job and was not helping around the house. The two women argued, but did not have physical altercations. Mother asked Guthridge to move out of her home, and ultimately filed an action in magistrate court to evict her. Following a bench trial on the dispossessory action, on June 11, 2012, the magistrate court entered a judgment in favor of Mother.[2] In the days preceding the trial, Guthridge told Mother that she wished Mother was dead and would be glad when she was dead. Mother expressed fear of Guthridge and added a lock on her bedroom door so that she could lock herself in at night.

After the court proceeding on June 11, 2012 both women returned to Mother's home, and they began to argue after Guthridge asked Mother for money for gas. Mother called Guthridge a liar and said that she was ungrateful. Guthridge's stepbrother ("Stepbrother"), who had a close relationship with Mother, was at home, and Mother directed him to go to the car and get her purse. After he returned and gave Mother her purse, he went into the living

[2]The writ of possession provided that it would not be executed until the expiration of seven days thereafter, and that in the event of an appeal, Guthridge was to pay $250 into the registry of the court on the first day of each month beginning July 1, 2012.

room, and he overheard the two women continuing to argue. Stepbrother then heard Mother screaming his name, and yelling "she's trying to kill me." Stepbrother ran into the room and witnessed Guthridge on top of Mother on the couch, stabbing her with a knife; Guthridge had Mother pinned down with her knee and arm, and was using her other arm and hand to repeatedly stab Mother, who was unarmed and trying to defend herself. When Stepbrother attempted to pull Guthridge off Mother, Guthridge swung her knife at him, and then attempted to stab Mother again. Stepbrother wrestled the knife from Guthridge, and the knife blade broke off from the handle, leaving a wound on Stepbrother's hand.

At Mother's direction, Stepbrother ran to the neighbors' house to get help; he related, "his sister killed his mom and she was stabbing her and stabbing her, she's going crazy." The neighbor called 911, but did not enter Mother's home; the police arrived shortly thereafter. A responding officer announced himself just outside Mother's residence; Guthridge emerged, and after the officer asked what was going on, she stated that she had just killed her mother. The officer placed Guthridge in custody, observing some scratches and marks on her arm, but no obvious knife wounds. Both the knife handle and the serrated knife blade

3

were recovered.

The medical examiner found bruises and contusions on Mother's arms and legs, and stab wounds on her left hand, right arm, both shoulders, upper chest, and left frontal skull.  The stabbing of the skull was inflicted with such  force that the tip of the knife blade broke off and became imbedded in the skull. The wounds were consistent with having been inflicted with a serrated blade and with the attacker standing over the victim. Mother died as the result of deep stab wounds to her chest, which damaged her aorta and heart, causing extensive hemorrhaging.

1. Guthridge contends that the trial court committed reversible error in its charges to the jury on aggravated assault with intent to murder[3] and felony murder[4] "due to the contradictory elements of those two closely interwoven counts." She argues that inasmuch as the court instructed the jury that the

---

[3]The charge, in relevant part, was:
> An assault is an act that places another in reasonable apprehension or fear of immediately receiving a violent injury.  A person commits the offense of aggravated assault when that person assaults another person with the intent to murder.

[4]The court charged,
> If you find and believe beyond a reasonable doubt that the defendant committed the homicide in this Bill of Indictment at the time the defendant was engaged in the commission of the felony of aggravated assault, then you would be authorized to find the defendant guilty of murder whether the homicide was intended or not.

aggravated assault, which was the underlying felony for the felony murder charge, required finding an intent to murder, and that it also instructed that intent was not an element of felony murder, the two charges together permitted the felony murder instruction to negate the intent requirement of the underlying felony on which it was based. But, the contention is unavailing.

At trial, there was no objection to the jury charges at issue. Consequently, review by this Court is precluded pursuant to OCGA § 17-8-58[5] unless plain error is shown. *Johnson v. State*, 295 Ga. 615, 617 (2) (759 SE2d 837) (2014).

> Plain error requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings. Stated more succinctly, the proper inquiry

[5]OCGA § 17-8-58 provides:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.

*Alvelo v. State*, 290 Ga. 609, 614-615 (5) (724 SE2d 377) (2012) (Citations and punctuation omitted.) Assuming solely for the sake of argument that the charges at issue amount to clear or obvious error, Guthridge cannot show that it affected her substantial rights inasmuch as the trial court entered a judgment of conviction and sentence with respect to the homicide only on the verdict finding her guilty of malice murder. *Parker v. State*, 282 Ga. 897, 899 (4) (655 SE2d 582) (2008). Consequently, the issue raised concerning the jury instructions given in connection with the felony murder count and that of aggravated assault with intent to murder is moot. Id.

2. Guthridge next contends that her trial counsel was ineffective in failing to object to what she terms "improper vouching" by a State's witness, Mother's friend and neighbor, that shortly before her death, Mother related Guthridge's statements about wishing Mother's death, and in failing to file a pre-trial motion in limine to prohibit introduction of evidence of "prior difficulties," that is, testimony by this same friend and neighbor as well as by Stepbrother about such

6

statements by Guthridge as related by Mother.

In order for Guthridge to prevail on her claim that her trial counsel was ineffective, she has to demonstrate under the standard set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that counsel's performance was deficient and that, but for such deficiency, there was a reasonable probability of a more favorable outcome at trial. *Allen v. State*, 293 Ga. 626, 627(2) (748 SE2d 881) (2013). To show a deficiency under *Strickland*, Guthridge must overcome the strong presumption that trial counsel's performance was within the broad range of reasonable professional conduct, the reasonableness of which is judged from counsel's perspective at the time of trial and under the specific circumstances then existing in the case. *Hites v. State*, 296 Ga. 528 (4) (769 SE2d 364) (2015). The remaining showing under *Strickland*, that of prejudice, requires that Guthridge demonstrate the reasonable probability that, absent any unprofessional errors on trial counsel's part, the result of her trial would have been different. Id. This Guthridge cannot do.

To begin with, trial counsel did object to such statements just prior to and at the start of trial, on the basis of relevance because they were made remote in time to the killing, and then on the ground of hearsay. The trial court overruled

7

the objection as to relevance and reserved ruling on the issue of hearsay; however, before cross-examination of Stepbrother, trial counsel expressed the belief that there were no grounds to keep Stepbrother from testifying about the statements. But, more significantly, even assuming deficiency on the part of trial counsel regarding counsel's handling of the statements, Guthridge cannot show a reasonable probability of a more favorable outcome at trial had the witnesses been prevented from testifying about them.

Guthridge alleges prejudice because she claims that the witnesses' statements were the bases for the trial court's refusal to give a jury charge on voluntary manslaughter, and if such charge had been given, she could have been convicted only of voluntary manslaughter and aggravated assault.[6] But, such argument overlooks the lack of evidence justifying a jury instruction on voluntary manslaughter and the overwhelming evidence of her malice in regard to Mother's murder. Indeed, Guthridge fails to point to any positive evidence which would have authorized an instruction on voluntary manslaughter; any harsh words to Guthridge by Mother just before the fatal stabbing was not

---

[6]Guthridge does not specify the count of aggravated assault at issue, but presumably she is referring to the count alleging her aggravated assault of Stepbrother.

sufficient evidence of provocation so as to authorize an instruction on voluntary manslaughter. *Palmer v. State*, 270 Ga. 278, 279 (2) (507 SE2d 755) (1998). In contrast, the evidence that Guthridge acted with malice included, inter alia, Mother's fear for her safety in her own home as shown by her installation of a new lock on her bedroom door, Guthridge's own inculpatory statements to police, the brutality of the Mother's wounds, and the testimony of Stepbrother as an eyewitness to Guthridge's savage and unprovoked attack upon Mother.

Guthridge's failure to show prejudice as required by *Strickland* is fatal to her claim of ineffective assistance of trial counsel; therefore, this Court need not address her claims of trial counsel's deficient performance. *Coulter v. State*, 295 Ga. 699, 701 (1) (763 SE2d 713) (2014).

3. Finally, Guthridge contends that the evidence at trial was insufficient to support the jury verdicts, especially with regard to malice murder. She urges that there was no direct or circumstantial evidence of malice other than the admitted hearsay evidence of Mother's statements. But, that is plainly not the case. See Division 2, supra. The evidence was sufficient to enable a rational trier of fact to find Guthridge guilty beyond a reasonable doubt of the crimes of

which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Judgments affirmed. All the Justices concur.


Decided May 11, 2015.

Murder. Clayton Superior Court. Before Judge Simmons.

Viveca B. Famber Powell, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Brian K. Ross, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.