In the Supreme Court of Georgia

Decided:   September 14, 2015

S15A1321.  BARRON v. THE STATE.

HINES, Presiding Justice.

William Earnest Barron appeals his conviction and sentence for felony murder while in the commission of aggravated assault in connection with the fatal stabbing of fellow inmate Roderick Rumph.  His sole challenge is that the trial court erred in refusing to charge the jury on voluntary manslaughter. Finding the challenge to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On October 5, 2011, Barron and Rumph were both inmates at a prison in

---

[1]The stabbing occurred on October 5, 2011.  On January 23, 2013, a Gwinnett County grand jury returned an indictment against Barron charging him with malice murder, felony murder while in the commission of aggravated assault, and aggravated assault.  He was tried before a jury February 24-27, 2014, and found not guilty of malice murder but guilty of aggravated assault; the jury was unable to reach a verdict on the charge of felony murder while in the commission of aggravated assault, so a mistrial was declared as to that count of the indictment.  Barron was retried before a jury solely on the felony murder charge April 28-30, 2014, and found guilty.  On May 2, 2014, he was sentenced to life in prison for the felony murder, to run consecutively to the sentence he was then serving; the aggravated assault from the first trial merged for the purpose of sentencing. A motion for new trial was filed on May 5, 2014, and the motion was denied on February 23, 2015.  A notice of appeal was filed on February 26, 2015, and the case was docketed to this Court's April 2015 term. The appeal was submitted for decision on the briefs.

Gwinnett County. The men were housed in different buildings of the prison complex, but the buildings were next to each other and shared the same yard. Sometime prior to the stabbing and in an attempt to acquire cigarettes, which were contraband in the prison, Barron gave Rumph commissary goods and a CD player in trade. Barron learned that Rumph was going to renege on the deal and not give Barron any cigarettes or return the goods Rumph had already been given. Barron became angry and discussed the situation with his cellmate. The cellmate tried to calm Barron and even offered him some of his own commissary items. Later that day Barron was still upset, though not "distraught," and set out to find Rumph; Barron had acquired a sharpened piece of metal, known as a "shank," and had the shank with him. After Barron found Rumph in a holding area known as the "sally port," Rumph told Barron that he was not going to give him anything and turned his back on Barron. Barron then stabbed Rumph in the back three times; during the stabbing, Barron said to Rumph, "how you gonna take from me." The mortally wounded Rumph fell to the ground. Barron threw down the shank and stood there calmly. Rumph was taken to the prison medical unit and pronounced dead shortly thereafter.

1. Barron has not enumerated as error that the evidence at his trial was

insufficient to sustain his conviction for felony murder; nevertheless, this Court

has reviewed the evidence and finds that it was sufficient to enable a rational

trier of fact to find Barron guilty beyond a reasonable doubt of the felony

murder and the underlying aggravated assault. *Jackson v. Virginia*, 443 U.S.

307 (99 SCt 2781, 61 LE2d 560) (1979).

2. There is no merit to Barron's contention that the trial court erred in

refusing to instruct the jury on the lesser charge of voluntary manslaughter, see

OCGA § 16-5-2 (a),[2] which he claims was his "sole defense."[3] The trial court

---

[2]OCGA§ 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

[3]At Barron's first trial, his counsel requested that the jury be charged on voluntary manslaughter and counsel later objected to the charge not being given. The trial court denied the requested charge because it found no evidence to warrant it, specifically no evidence of sufficient provocation. During the charge conference in the second trial, Barron's counsel again requested that the jury be charged on voluntary manslaughter and the trial court again denied the request on the same ground. Barron now claims this was error in regard to both trials. But, even assuming arguendo that he can properly now claim any error in the first trial, there could be no harm from the refusal to charge on voluntary manslaughter as a lesser offense in such trial because he was acquitted of malice murder and no verdict was then returned on the charged felony murder. Harm as well as error is required for reversal. *McIntyre v. State*, 266 Ga. 7, 10 (4) (463 SE2d 476) (1995).

determined that the facts did not justify the giving of such a charge. Yet, Barron

urges that there was evidence of the requisite provocation in that he "snapped"

because he was "disrespected" by Rumph, and that such behavior in prison is

sufficient provocation to justify a voluntary manslaughter charge because

respect and reputation are very important and without them one becomes a

target.

As a threshold matter, Barron failed to object or take any exception to the

trial court's instructions at the conclusion of its charge to the jury in the present

trial, and consequently, review of the issue by this Court is precluded by OCGA

§ 17-8-58[4] unless plain error is shown. *Guthridge v. State*, 297 Ga. 126, 129 (1)

(772 SE2d 627) (2015); *Johnson v. State*, 295 Ga. 615, 617(2) (759 SE2d 837)

---

[4]OCGA § 17-8-58 provides:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

(2014). In order to demonstrate plain error, there must be a clear or obvious legal error or defect which was not affirmatively waived by the appellant and that must have affected the appellant's substantial rights, i.e., affected the outcome of the trial-court proceedings; indeed, the appropriate inquiry is whether the instruction, or the failure to give it, was error; whether this was obviously so; and whether the error likely affected the outcome of the proceedings. *Guthridge v. State*, at 129 (1). In the case in which the failure to give the instruction at issue is shown to be such an error, "the appellate court may remedy the error by exercising its discretion if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Alvelo v. State*, 290 Ga. 609, 615(5) (724 SE2d 377) (2012).

There was no such error in this case. A request to charge has to be "legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence." *McLean v. State*, 291 Ga. 873, 877 (4) (a) (738 SE2d 267) (2012). Whether the defendant presented any evidence of provocation sufficient to excite the passions of a reasonable person, i.e., sufficient to sustain voluntary manslaughter, is a question of law for the courts. *Campbell v. State*, 292 Ga. 766, 767 (2) (740 SE2d 115) (2013). Barron relies

upon evidence that he "snapped" because of Rumph's behavior, which he characterizes as disrespect for him. But, the question is not Barron's violent response, but rather what precipitated it.

First, the evidence shows that Barron had substantial time to cool down after he learned that Rumph was not going to procure the cigarettes for him and before he intentionally sought out Rumph. In fact, that Barron discussed the matter with his cellmate, procured the shank, and then later went in search of Rumph, was evidence that Barron acted in a "rational and calculated fashion" rather than "solely as a result of a sudden, violent, and irresistible passion." *Taylor v. State*, 282 Ga. 502, 503-504 (2) (651 SE2d 715) (2007).

As for the fatal encounter itself, there was no evidence of any significant heated verbal exchange between Barron and Rumph, and even if there had been, words alone, regardless of whether they are highly insulting, will not justify the excitement of such passion so as to reduce the crime of murder to the lesser offense of voluntary manslaughter, where the killing is done out of the indignation aroused by the use of the opprobrious words. Id. at 767-768 (2). Nor can the mere fact that Rumph turned his back on Barron provide the required provocation because contemptuous gestures alone made to the slayer

6

will not permit the killing to be downgraded to voluntary manslaughter. *Tepanca v. State*, 297 Ga. 47, 50 (5) (771 SE2d 879) (2015). Simply, there was no evidence presented at trial of the provocation that would elicit a violent and irresistible passion in a reasonable person, and thereby, warrant a jury instruction on the lesser included offense of voluntary manslaughter. *Campbell v. State*, supra at 768 (2).

Judgment affirmed. All the Justices concur.